**UNITED STATES of America, Appellee,**

v.

**James Vernell MOORE, Appellant.**

No. 87–5422.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1988.
Decided May 24, 1988.

Rehearing and Rehearing En Banc
Denied July 8, 1988.

Kevin A. Lund, Rochester, Minn., for appellant.

Jon M. Hopeman, Minneapolis, Minn., for appellee.

Before ARNOLD, ROSS and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge.

Appellant James Vernell Moore appeals from a judgment entered September 25, 1987 in the District of Minnesota, Diana E. Murphy, *District Judge*, 669 F.Supp. 289, following Moore's conviction by a jury on June 24, 1987 of two counts of assault with a deadly and[1] dangerous weapon upon federal correctional officers engaged in their official duties, in violation of 18 U.S.C. §§ 111 (1982) and 1114 (Supp.IV 1986). Moore's appeal brings up for review the district court's order entered September 3, 1987 denying his motions for (1) a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) and (2) a new trial pursuant to Fed.R.Crim.P. 33.

Moore had tested positive for antibodies for the Human Immunodeficiency Virus ("HIV virus") which are considered to be indicative of the presence of Acquired Immune Deficiency Syndrome ("AIDS"). After learning that he had tested positive for the HIV virus, Moore bit two correctional officers during a struggle. The indictment charged that the deadly and dangerous weapon Moore used was his own mouth and teeth.

On appeal, Moore claims, first, that the evidence at trial was insufficient to sustain a finding that Moore's mouth and teeth were a deadly and dangerous weapon; and, second, that the district court committed reversible error in refusing to charge the jury in accordance with Moore's proposed Instruction # 12, which would have informed the jury that, if the government failed to prove that AIDS can be transmitted by means of a bite, then it failed to prove that Moore's mouth and teeth were a deadly and dangerous weapon.

We hold that the evidence at trial was sufficient to sustain a finding that Moore's mouth and teeth were a deadly and dangerous weapon because that evidence supported a finding that Moore used his teeth in a manner likely to inflict serious bodily harm—even if he had not been infected with the HIV virus. We further hold that the district court correctly refused to charge in accordance with Moore's proposed Instruction # 12.

We affirm.

I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

At the time of the incident which is the subject of this appeal, Moore was an inmate at the Federal Medical Center ("FMC") in Rochester, Minnesota. On November 25 and December 3, 1986, Dr. Clifford Gastineau had Moore tested for the HIV virus because his long time heroin addiction placed him in a risk category for AIDS. In mid–December, Dr. Gastineau advised Moore that the tests were positive and that the disease could be fatal. He told Moore that the disease could be transmitted by way of blood or semen and counseled him to avoid unprotected intercourse

---

* Of the Second Circuit, by designation.

1. It should be noted that, although the statutory language is in the disjunctive—"deadly *or* dangerous weapon", the indictment charged in the conjunctive—"deadly *and* dangerous weapon" (emphasis added). In this opinion we shall use the conjunctive language adopted by the parties.

and not to share needles, razor blades or toothbrushes.

On January 7, 1987, Lieutenant Ronald E. McCullough, a correctional officer at the FMC, called Moore to his office as part of his investigation of a report that Moore had been smoking in a non-smoking area in the FMC's medical surgical unit. Moore refused to answer questions. When McCullough told Moore he would have to be placed in seclusion and administrative detention, Moore refused to move. McCullough called for assistance. Correctional officer Timothy Voigt arrived. He told Moore to stand so that he could be handcuffed. Moore said "I won't be cuffed." McCullough called two additional correctional officers who arrived and attempted to lift Moore from his chair. Moore reacted violently.

In the ensuing struggle, Moore kneed McCullough in the groin twice, attempted to bite him on the hand, and did bite him on the left knee and hip without breaking the skin. Moore held his mouth over the bite on the leg for several seconds. He also bit Voigt on the right leg, holding his mouth against the bite from five to seven seconds. Dr. Gastineau testified that during the struggle a mild abrasion appeared at the point on Voigt's thigh where Moore had bitten him. This abrasion apparently resulted from friction with the fabric of Voigt's pants.[2] The abrasion may have come into contact with a wet patch on Voigt's pants which possibly was made by Moore's saliva. During the struggle, Moore threatened to kill the officers.

On January 10, 1987, Moore told Debra Alberts, a nurse at the FMC, that he had "wanted to hurt them bad, wanted to kill the bastards." He also said that he "hopes the wounds that he inflicted on the officers when he bit them were bad enough that they get the disease that he has."

On April 9, 1987, Moore was indicted. The indictment charged that Moore willfully had assaulted McCullough and Voigt, federal correctional officers engaged in their official duties, by means of a deadly and dangerous weapon, i.e., Moore's mouth and teeth. The indictment specifically charged that Moore was "a person then having been tested positively for the [HIV] antibody". Although Moore also had tested positive for hepatitis, the indictment did not refer to this disease.

At trial, Dr. Gastineau testified that the medical profession knew of no "well-proven instances in which a human bite has resulted in transmission of the [HIV] virus to the bitten person." He agreed with a medical manual that stated there is no evidence that AIDS can be transmitted through any contact that does not involve the exchange of bodily fluids and that, while the virus has appeared in minute amounts in saliva, it has never been shown to have been spread through contact with saliva. He said that theoretically "one cannot exclude the possibility" of transmission through biting. Later he added, however, "it seems that in medicine everything is conceivable or possible." He testified about a case of a person who had been bitten deeply by a person with AIDS and had tested negative 18 months later.

Dr. Gastineau also testified that, apart from the matter of AIDS, a human bite can be dangerous. He said that when a human bite is of a more damaging nature than the ones inflicted by Moore and "where the skin is really broken to greater depths", it can be "much more dangerous than a dog bite." He also said that "there are probably 30 to 50 variet[ies] of germs in the human mouth that together, all of them acting in concert, could cause serious infection." He characterized a human bite as "a very dangerous form of aggression"

2. The parties dispute whether this bite punctured Voigt's skin. Moore, citing Dr. Gastineau's testimony, asserts that the bite failed to penetrate the fabric of Voigt's pants. The government, citing Voigt's testimony, asserts that Moore bit deeply into Voigt's thigh, puncturing Voigt's skin in three places. Voigt's sub-sequent testimony indicates, however, that the bleeding at the site of this wound was due to an abrasion caused by the friction of his pants rubbing against his legs. Thus the "puncture" wounds he describes apparently were indentations that in themselves did not cause bleeding.

and "one of the most dangerous of all forms of bites".

On June 24, 1987, the jury found Moore guilty on both counts of the indictment. The jury had been instructed on the lesser included offense of assaulting a federal officer. The court declined to instruct the jury that the government was required to prove that AIDS could be transmitted by way of a bite in order to prove that Moore's mouth and teeth were a deadly and dangerous weapon. Moore was sentenced to concurrent five-year prison terms, which were to run consecutively to the seven-year federal prison sentence he was serving at the time of the incident.

## II.

In reviewing the sufficiency of the evidence to determine whether it supports the conviction, we must view the evidence in the light most favorable to the government, grant the government the benefit of all inferences that reasonably may be drawn from the evidence, and uphold the conviction if there is substantial evidence to support it. *United States v. Gatewood*, 786 F.2d 821, 824 (8th Cir.1986).

■ The question of what constitutes a "deadly and dangerous weapon" is a question of fact for the jury. *United States v. Czeck*, 671 F.2d 1195, 1197 (8th Cir.1982). We previously have defined a "deadly and dangerous weapon" as an object "used in a manner likely to endanger life or inflict serious bodily harm." *United States v. Hollow*, 747 F.2d 481, 482 (8th Cir.1984). "Serious bodily harm" has been defined as something more than minor injury, but not necessarily injury creating a substantial likelihood of death. *See United States v. Webster*, 620 F.2d 640, 641–42 (7th Cir. 1980); *United States v. Johnson*, 324 F.2d 264, 267 (4th Cir.1963). In *Webster*, a case arising under 18 U.S.C. § 113 (1982), the court stated that the phrase contains "words in general use by laymen" and that "[t]here is no indication that Congress in adopting such commonly used terms intended to include only the very highest degree of serious bodily injury." 620 F.2d at 642.

■ As a practical matter, it often is difficult to determine whether a particular object is a deadly and dangerous weapon. Almost any weapon, as used or attempted to be used, may endanger life or inflict great bodily harm; as such, in appropriate circumstances, it may be a dangerous and deadly weapon. *United States v. Davis*, 429 F.2d 552, 556 (8th Cir.1970). Moreover, the object need not be inherently dangerous, or a "weapon" by definition, such as a gun or a knife, to be found to be a dangerous and deadly weapon. Courts frequently have considered various kinds of objects to be deadly and dangerous, including such normally innocuous objects as (1) a chair, *Johnson, supra,* 324 F.2d at 266; (2) a walking stick, *United States v. Loman*, 551 F.2d 164, 169 (7th Cir.1977), *cert. denied,* 433 U.S. 912 (1978); (3) a broken beer bottle and pool cue, *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir.1982), *cert. denied,* 460 U.S. 1016 (1983); (4) an automobile, *United States v. Williamson*, 482 F.2d 508, 513 (5th Cir.1973); and (5) mop handles, *United States v. Bey*, 667 F.2d 7, 11 (5th Cir.1982). In short, "what constitutes a dangerous weapon depends not on the nature of the object itself but on its capacity, given the manner of its use, to '... endanger life or inflict great bodily harm.'" *Id.* (quoting *Johnson, supra,* 324 F.2d at 266).

■ As a corollary, it is not necessary that the object, as used by a defendant, actually cause great bodily harm, as long as it has the capacity to inflict such harm in the way it was used. *Id.; Johnson, supra,* 324 F.2d at 266. In *Johnson*, the defendant caused only a minor injury when he struck the victim with a chair; but, since he wielded the chair in a way that could have endangered the victim's eye or caused a serious head wound, the court held that the chair was a dangerous weapon. *Id.*

Courts also have held that in appropriate circumstances a part of the body may be a dangerous weapon. *United States v. Parman*, 461 F.2d 1203, 1204 n. 1 (D.C.Cir. 1971) (indictment charged assault with a deadly weapon, the deadly weapon being

"biting with teeth"); *State v. Born,* 280 Minn. 306, 159 N.W.2d 283 (1968) (fists or feet in certain circumstances may be dangerous weapons when used to inflict injury).

### III.

In light of the law on what may be considered a deadly and dangerous weapon, we conclude that the evidence in the instant case was sufficient to support the jury's finding that Moore used his mouth and teeth as a deadly and dangerous weapon. As stated above, Dr. Gastineau testified that a human bite is potentially "more dangerous than a dog bite"; that it is capable of causing "serious infection"; and that it can be "a very dangerous form of aggression". We reaffirm that this potential for "serious infection" is a form of "serious bodily harm" within the meaning of our decision in *Hollow, supra,* 747 F.2d at 482–83, especially since we use the term in its general lay meaning and do not limit it to only the highest degree of injury. *Webster, supra,* 620 F.2d at 642. We therefore hold that Dr. Gastineau's testimony, viewed in the light most favorable to the government, was substantial evidence supporting the jury's finding that Moore used his mouth and teeth in a manner likely to inflict serious bodily harm.

It is true that Dr. Gastineau testified that he was describing a bite "more damaging" than those actually inflicted by Moore. As stated above, however, it is the *capacity* for harm in the weapon and its use that is significant, not the *actual* harm inflicted. *Bey, supra,* 667 F.2d at 11; *Johnson, supra,* 324 F.2d at 266. It may be that Moore did not transmit any of the "30 to 50" varieties of germs he might have transmitted to the officers. He nevertheless used his mouth and teeth in a way that *could* have transmitted disease. It was only a fortuity that he did not do so. The instant case is similar to *Johnson,* where it was only fortuity which prevented the defendant from causing serious bodily injury when he struck the victim in the head with a chair. Since a human bite has the capacity to inflict serious bodily harm, we hold

that the human mouth and teeth are a deadly and dangerous weapon in circumstances like those in the instant case, even if the harm actually inflicted was not severe.

The gravamen of Moore's claim is that on the evidence the only way the government could establish that his mouth and teeth were used as a deadly and dangerous weapon was for it to establish that AIDS can be transmitted by biting. As Moore points out, Dr. Gastineau's testimony, which was the only evidence on the transmissibility of the HIV virus, established only a remote or theoretical possibility that the virus could be transmitted through biting. He asserts that the government did not try the case on the theory that *any* human bite—regardless of the presence of the HIV virus—was a deadly and dangerous weapon. His assertion rests on the facts that the indictment charged that Moore, "a person then having been tested positively for the [HIV] antibody, did willfully and forcibly assault" the two officers "by means of a deadly and dangerous weapon, namely, his mouth and teeth"; that the indictment failed to make any similar charge with respect to his hepatitis infection; and that the government introduced a substantial amount of evidence at trial concerning the transmissibility of AIDS by way of biting.

We reject Moore's massive emphasis on the AIDS aspect of this case. As stated above, the record, viewed in the light most favorable to the government, contained sufficient evidence to allow the jury to find that Moore's mouth and teeth were used as a deadly and dangerous weapon, even if Moore was *not* infected with AIDS. As the district court correctly held, moreover, the reference to AIDS in the indictment was mere surplusage and did not limit the government to one theory of the case at trial. *United States v. Bell,* 767 F.2d 405, 406–07 (8th Cir.1985).

Although there is sufficient evidence in the record that the human mouth and teeth may be used as a deadly and dangerous weapon, we nevertheless wish to emphasize that the medical evidence in the record was

insufficient to establish that AIDS may be transmitted by a bite. The evidence established that there are no well-proven cases of AIDS transmission by way of a bite; that contact with saliva has never been shown to transmit the disease; and that in one case a person who had been deeply bitten by a person with AIDS tested negative several months later. Indeed, a recent study has indicated that saliva actually may contain substances that *protect* the body from AIDS. *New York Times,* May 6, 1988, at A 16, col. 4. While Dr. Gastineau testified "in medicine everything is conceivable", in a legal context the possibility of AIDS transmission by means of a bite is too remote to support a finding that the mouth and teeth may be considered a deadly and dangerous weapon in this respect.

In short, we hold that the evidence was sufficient to support the finding that Moore's mouth and teeth were a deadly and dangerous weapon, regardless of the presence or absence of AIDS.

### IV.

This brings us to Moore's claim that the district court improperly declined to charge the jury in accordance with his proposed Instruction # 12 which requested that the court charge that "If the government has failed to prove beyond a reasonable doubt that the virus commonly referred to as AIDS can be transmitted from one human being to another human being by a bite, the government has failed to prove that the human mouth and teeth are a deadly and dangerous weapon." A defendant is entitled to an instruction on his theory of the case if there is evidence to support it and a proper request is made. *United States v. Casperson,* 773 F.2d 216, 223 (8th Cir.1985). Here, as stated above, the government could prove that the human mouth and teeth are a deadly and dangerous weapon without referring to AIDS at all. The proposed instruction would improperly have limited the ways in which the government could prove its case.

We hold that the proposed instruction was not supported by the evidence and was not a proper request.

### V.

To summarize:

We hold that the evidence was sufficient to support the jury finding that Moore's mouth and teeth were used as a deadly and dangerous weapon, even though the evidence did not support a finding that Moore's bite could have transmitted AIDS.

We also hold that the district court correctly declined to instruct the jury that, if the government failed to prove that AIDS could be transmitted by biting, it had failed to prove that Moore had used a dangerous and deadly weapon.