UNITED STATES, Appellant,

v.

Robert A. WOODS, 259 27 8869, Hospital-
man (E–3) U.S. Navy, Appellee.

NMCM No. 883617 M.

U.S. Navy–Marine Corps Court of
Military Review.

16 Nov. 1988.

Lt. Scott A. Hagen, JAGC, USNR, Appel-
late Government Counsel.

Lt. Teresa A. McPalmer, JAGC, USNR,
Appellate Defense Counsel.

OPINION OF THE NAVY–MARINE
CORPS COURT OF MILITARY RE-
VIEW ON APPEAL BY THE UNIT-
ED STATES

JONES, Judge:

This case comes to us by way of appeal
by the United States pursuant to Uniform
Code of Military Justice [hereinafter
UCMJ], Article 62, 10 U.S.C. § 862, urging
this Court to reverse the dismissal of the
sole charge and specification by the mili-
tary judge. We will do so.

The accused was arraigned on the follow-
ing charge and specification:

Charge: Violation of the UCMJ, Article
134, 10 U.S.C. § 934.

Specification: In that Hospitalman Rob-
ert A. Woods, U.S. Navy, Naval Medical
Clinic, Norfolk, Virginia, on active duty,
in or around Virginia Beach, Virginia,

sometime between 14–28 November 1987, then knowing that his seminal fluid contained a deadly virus (Human T-cell Lymphotropic Virus 3) capable of being transmitted sexually, and having been counseled regarding infecting others, an act that he knew was inherently dangerous to others, and that death or great bodily harm was a probable consequence of the act, and that was an act showing wanton disregard of human life, did engage in unprotected (without the utilization of a condom or other device to protect the partner from contamination) sexual intercourse with Seaman C_____, U.S. Navy, such conduct being prejudicial to the good order and discipline in the Armed Forces.

The accused moved to dismiss the charge and specification for failure to state an offense and the military judge granted the motion. As the basis for his ruling, the military judge stated that the specification was deficient because it failed to allege sufficient words of criminality and because it did not allege that the accused failed to inform Seaman C_____ that he was infected with "Human T-cell Lymphotropic Virus 3" [hereinafter AIDS virus].[1]

 Although we reach a position contrary to that taken by the military judge, we commend him for his pursuing the issue and requiring counsel to litigate the question of the legal sufficiency of the specification as early in the proceedings as he could. We also agree with appellate defense counsel, as she ably demonstrated in her brief, that the specification at issue is no model of clarity. The military judge, however, did not dismiss the charge and specification on this ground; moreover, as has been the test since *United States v. Sell*, 3 U.S.C.M.A. 202, 206, 11 C.M.R. 202, 206 (1953),

The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

 Turning our attention to the rationale of the military judge, we begin by recognizing the proposition that the general article is not "a catchall as to make every irregular, mischievous, or improper act a court-martial offense." *United States v. Sadinsky*, 14 U.S.C.M.A. 563, 565, 34 C.M.R. 343, 345 (1964). We believe a criminal offense is alleged here, however, based upon the factors cited by the government: the accused is alleged to have engaged in unprotected sexual intercourse, knowing that his seminal fluid contained a deadly virus capable of being transmitted by means of sexual intercourse, that unprotected sexual intercourse was inherently dangerous to his partner, and that the probable consequence of such act was death or great bodily harm. There is, of course, no requirement that conduct be prohibited by some order, regulation, or statute in order to fall within the proscription of Article 134, UCMJ. *Sadinsky*, 34 C.M.R. at 346. In his discussion of the antecedent to Article 134 and the term "to the prejudice of good order and military discipline," Colonel Winthrop observes that the act or duty neglected must be one which a military person may legally and properly be called upon to do or perform.[2] All parties at trial agreed that the Special SF 600, Counseling Statement for HTLV–3 Seropositive Patients (Appellate Exhibit IX), was the standard form statement used in cases such as appellant's at the time in question. Among its pertinent provisions

---

1. In an attempt to remedy the military judge's concerns raised in earlier sessions, the Government submitted an Additional Charge incorporating the traditional words of criminality, "wrongfully" and "unlawfully," and the allegation that the accused had failed to give notice to Seaman C_____ of his HTLV 3 infection. This

effort, however, occurred after arraignment and that Additional Charge was correctly dismissed upon defense objection.

2. WINTHROP, MILITARY LAW AND PRECEDENTS, 723 (2d ed. 1920).

are acknowledgments by the person counseled by a physician:

1. That my blood contains the antibody for human T-cell lymphotropic virus 3 (HTLV–3).

2. That my body fluids (especially blood and semen) are therefore highly likely to contain living HTLV–3 virus, which means that I am potentially infectious to others.

3. That I cannot donate blood, plasma, semen, body organs, or body parts, now or at any time in the future, either as a routine or an emergency donation.

4. That I can potentially infect others through intimate sexual contact with them.

5. That I have been advised that I should inform potential sexual partners of my infection, so that they may have informed consent to have sexual relations with me; and that potential ways to avoid infecting others, such as the use of condoms, has [sic] been discussed.

6. That my seropositive status may result in assignment restrictions.

7. That my medical status using the information gathered during this evaluation has been explained to me. If I exhibit any clinical or immunologic abnormality, it has also been explained to me.

8. That I have been advised to tell medical and dental personnel who care for me of my infection, so they may use appropriate precautions while providing my care, and

9. That I will need to be reevaluated at intervals prescribed by Navy/Marine Corps policy, and that I will be transferred to a designated Naval Hospital for such evaluations.

 Under Article 134, UCMJ, if the conduct is punished as a disorder or neglect to the prejudice of good order and discipline in the armed forces, as here, then the following proof is required:

(1) That the accused did or failed to do certain acts; and

(2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces.

A particular individual, previously counseled in accordance with the standard counseling statement, would then be aware that his semen is highly likely to contain the HTLV–3 virus, that he is potentially infectious to others through intimate sexual contact, and that he should inform potential sexual partners of his infection so they may give informed consent to have sexual relations. He would also be aware of the potential ways to avoid infecting others, including the use of condoms. Where such an individual is then alleged to have "unprotected" sexual intercourse with another Navy service member, the allegation, on its face, describes conduct that we conclude has both direct and adverse impact upon relations between military personnel, and which substantially derogates from the health, welfare, and discipline of the military command. The privacy interest appellant may have in private sexual intercourse is surely outweighed by the risk of infection and the calamitous results that befall the individual afflicted with AIDS, and society's interest in stemming the spread of this pernicious disease.

Although the better practice would have been to employ more traditional words of criminality to this allegation, such as "wrongfully" or "unlawfully", to characterize the conduct,[3] we do not believe the absence of such words is dispositive. *United States v. Caskin,* 12 U.S.C.M.A. 419, 31 C.M.R. 5 (1961). The mere addition of such words, by themselves, cannot make criminal, acts which are obviously not. *Sadinsky,* 34 C.M.R. at 345. Rather, it is the nature of the alleged act, taken as a whole, that we find controlling. Such an act of "unprotected" sexual intercourse, alleged as in "wanton disregard of human life"

---

**3.** If the alleged act is not itself an offense, but is made an offense either by applicable statute (including Articles 133, 10 U.S.C. § 933 and 134), or regulation or custom having the effect of law, then words indicating criminality such as "wrongfully", "unlawfully", or "without authority" (depending upon the nature of the offense) should be used to describe the accused's acts. Discussion, R.C.M. 307(c)(3) at G(ii).

sufficiently alleges that appellant possessed the requisite *mens rea* or criminal intent,[4] excluding any possibility that appellant's behavior was accidental or that the conduct charged could reasonably be interpreted as innocent.

Finally, although private sexual intercourse between unmarried adults is not an offense under military law, *United States v. Berry*, 6 U.S.C.M.A. 609, 20 C.M.R. 325 (1956), we believe that the specification, as drafted, alleges aggravating circumstances that distinguish this conduct from fornication alone. The allegation of death or great bodily harm as a probable consequence of the "unprotected" intercourse, takes this type of conduct beyond the bounds of "wholly private moral conduct." *United States v. Snyder*, 1 U.S.C.M.A. 423, 427, 4 C.M.R. 15, 19 (1952); *United States v. Johanns*, 20 M.J. 155, 159 (C.M.A.1985).

We now turn our attention to the question as to whether the specification fails to allege an offense absent the allegation that the accused failed to inform Seaman C_____ that he was infected with the AIDS virus. The treatises provide the basis for our resolution of this issue.

A crime *may be* so defined, that the absence of the victim's consent is an element thereof. (Emphasis added). Since, in such case, the presence of the victim's consent would negate an element of the crime, consent would be a defense. Thus, consent destroys the criminal character of an act of sexual intercourse which would otherwise constitute rape....

Where conduct constitutes a crime because it causes or threatens bodily harm, the law as a matter of public policy will allow a victim's consent to be effective only if the conduct, to which the consent refers, does not cause or threaten serious bodily harm or death....

In another class of crimes, the defendant's conduct may be criminal whether or not the victim consents. Thus in a prosecution for statutory rape, the apparent consent of the female is no defense. In order to protect the female victim, even from herself, the law regards her as incapable of giving an effective consent. 1 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW 46 (14th ed. 1978).

In similar vein are the pertinent discussions taken from Perkins and Boyce, that recognize three different categories of crime when studying the legal effect of consent or nonconsent.

(1) In certain offenses the *absence* of consent is an essential ingredient of the crime by the very words of the definition. Thus in common-law rape the phrase "without her consent" ... is found in the definition itself. The finding of consent on the part of the person alleged to have been harmed disproves the commission of such a crime.

(2) At the other extreme will be found those offenses which are as readily possible with the consent of the person harmed as without it, such as "statutory rape"....

(3) Between these two extremes is a third category in which consent or nonconsent will determine whether the conduct was lawful or unlawful within certain limits, but not beyond. The typical example is battery.... The act of one who grabs another by the ankles and causes him to fall violently to the ground may result in a substantial jail sentence under some circumstances, but receive thunderous applause if it stops a ball carrier on the gridiron. The difference is because one who engages in a game such as football, consents to such physical contact as is *normally and properly to be expected* in playing the game. (Emphasis added.)[5]

---

4. As the government properly observes, the word "wanton" expressly serves as the word of criminality in the sample specification for the offense of reckless driving. Manual for Courts-Martial, United States, 1984, Part IV, para. 35.

5. R. PERKINS & R. BOYCE, CRIMINAL LAW, 1074–1075 (3d ed. 1982). Moreover, consent to

one thing is not consent to a different or additional thing. For that proposition Perkins and Boyce cites the case of *State v. Lankford*, 29 Del. 594, 102 A. 63 (1917), that a wife who consented to marital intercourse did not consent to the communication of a loathsome disease with which her husband was infected and without

Similarly, persons may lawfully engage in a friendly boxing match as a test of skill; but if two engage in an angry fist fight, by mutual consent, exchanging blows intended or likely to cause great bodily injury, both are guilty of assault and battery.[6]

Drawing upon those same principles, we believe that the gravamen of this offense is the accused's reckless conduct in having unprotected sexual relations with another. In this case, the government has alleged that appellant knew that by having "unprotected" sexual intercourse, he would be engaging in an act inherently dangerous to others, and that death or great bodily harm was a probable consequence of that act.

The government conceded at trial that had appellant notified Seaman C_____ in advance that he was infected, and that she thereafter engaged in "unprotected" sexual intercourse with him, he would have a defense to the charge. Appellate government counsel, however, take the position that lack of consent is neither an element of the offense, nor is consent a defense. Under the appellate government theory, even if Seaman C_____ had engaged in "unprotected" intercourse knowing of appellant's infection, the societal interest in stopping the spread of this lethal disease and in the protection of victims, even from themselves, may be sufficient to withhold an apparent consent defense as a matter of law. This would be in the second category of offenses described by Perkins and Boyce which are as readily possible with the consent of the person harmed as without it.

On the other hand, it may be asserted that the charge as drafted falls within that intermediate category, embracing offenses which do not require the absence of consent by definition; yet, cannot be committed as readily with consent as without. In this category of offenses, the presence or absence of consent may well be the determining factor as to whether the commission of the crime is disproved.[7] In this case, the government has previously conceded to the military judge and the defense that appellant would have a defense had he notified Seaman C_____ in advance that he was infected, and that she then engaged in "unprotected" sexual intercourse with him. This is the present state of the case, and we shall not decide the matter until it is presented to us for review.[8] Thus, although we need not resolve whether consent would constitute a valid defense to the charge alleged, we do conclude that failure to provide notice of the AIDS infection need not be alleged as an element of the offense.

The appeal of the United States is granted. The ruling of the military judge dismissing the charge and specification is vacated and the record will be returned to the military judge for disposition not inconsistent with this opinion.

Chief Judge BYRNE and Judge ALBERTSON concur.

---

her knowledge. There, in affirming conviction, the court upheld the judge's instructions that:

> A wife in confiding her person to her husband does not consent to cruel treatment or to infection with a loathsome disease. A husband, therefore, knowing that he has such a disease, and concealing the fact from his wife, by accepting her consent, and communicating the infection to her, inflicts on her physical abuse, and injury, resulting in great bodily harm; and he becomes, notwithstanding his marital rights, guilty of an assault and indeed a completed battery. 2 Bish.Crim.Law § 72b(2)....
>
> If the jury should find from the evidence that the accused, knowing that he was infected with a venereal disease, and, without informing his wife of that fact, had sexual intercourse with her after such knowledge had been communicated to him, and thereby infected her with the disease, their verdict should be guilty.

6. PERKINS & BOYCE at 1076.

7. PERKINS & BOYCE at 1076.

8. We also do not reach the question whether notice to one's spouse of the HTLV–3 viral infection would serve as a defense to such an allegation of "unprotected" intercourse within the context of the marital relationship.