**UNITED STATES**

v.

**Sergeant Nathaniel JOHNSON, Jr., FR 436–11–4583, United States Air Force.**

**ACM 26812.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 Feb. 1988.
Decided 22 Dec. 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Lynne H. Wetzell.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Lieutenant Colonel Robert E. Giovagnoni; Major Terry M. Petrie and Major Mark C. Ramsey, USAFR.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

In *United States v. Womack*, 27 M.J. 630 (A.F.C.M.R.1988), we upheld the court-martial conviction of a non-commissioned officer who had AIDS (Acquired Immune Deficiency Syndrome). His offense was willful disobedience of an order of a superior commissioned officer under Article 90, UCMJ, 10 U.S.C. § 890. That order, among other things, required him to take affirmative steps to caution and protect any future sexual partners.

But what if no order is given? Today, we address that question and affirm a conviction in an AIDS case under Article 128, UCMJ, 10 U.S.C. § 928, for aggravated assault. In doing so, we resolve various issues raised by the accused, including due process, multiplicity, sufficiency of the evidence, and sentence appropriateness.

### Factual Setting

Sergeant Johnson was screened for the Human Immunodeficiency Virus (HIV) at McChord Air Force Base, Washington in July, 1987. He tested positive for the virus; in September, he was sent to Wilford Hall Medical Center, Lackland Air Force Base, Texas for evaluation.

While a patient there, he attended a series of lectures, therapy sessions, and sup-

port groups dealing with his infection. He was briefed on the HIV phenomenon and safe sex practices, and he was advised how to prevent transmission of the infection. During an interview by medical personnel, he acknowledged his understanding of the information presented. One of the handouts distributed to the accused dealt in detail with the risks of sexual intercourse for those carrying the HIV virus. It advised how to lessen the dangers of transmitting that virus, described the degree of jeopardy inherent in various sexual practices, and explained the proper use of condoms. (Patients at Wilford Hall are not enjoined to abstain from sexual activity; rather, they are instructed in low risk sexual options.) Prior to departing the hospital on furlough, the accused was required to complete a "Pass for HIV Patient Privileges" form on which he certified that he had been counselled regarding the HIV infection and its method of transmission. He acknowledged that he would inform sexual partners of his condition prior to sexual activity and utilize appropriate protective measures.

Meanwhile, by a memorandum dated 23 September 1987, the Assistant Secretary of the Air Force (Readiness Support) implemented a revised DOD policy governing HIV-infected servicemembers. The directive requires commanders of HIV-infected members to order them to adhere to what is taught in the preventive medicine counselings. It cautions that failure to follow these rules can result in administrative or disciplinary action.

Sergeant Johnson was never given such an order by his commander. Upon his return to McChord AFB, he was driving off-base when he encountered J.P.H., a 17-year old male. The two went to Sergeant Johnson's room and proceeded to drink. J.P.H. rapidly consumed five Southern Comforts, two English-type beers, and a 16-ounce beer. During the evening, Sergeant Johnson invited J.P.H. to lie on a white mink blanket on the floor. When he did, the accused performed fellatio on J.P. H. During the evening, J.P.H. became ill

from his drinking and vomited into a paper sack which the accused took to the trash can in the room. J.P.H. then rolled onto his stomach, at which time the accused attempted to place his finger into J.P.H.'s anus. J.P.H. tightened his anus and told the accused to stop, which he did. Then, the accused laid on J.P.H.'s back; J.P.H. claimed to have felt the accused's unsheathed penis between his legs. J.P.H. vomited once or twice more. Eventually, the accused drove J.P.H. to the trailer where he lived.

The accused was found guilty by a military judge sitting alone of sodomy by fellatio (Article 125), 10 U.S.C. § 925; and of aggravated assault (Article 128) and attempted sodomy (Article 80), 10 U.S.C. § 880, both premised on the act of attempted consensual anal sex. The accused conceded that he was a homosexual, and he pleaded guilty to fellatio with consent under Article 125. At trial, J.P.H. testified that if he had known his assailant had the AIDS virus, he would have left the accused's room.

The specific aggravated assault specification lodged against the accused states:

In that SERGEANT NATHANIEL JOHNSON, JR., 62d Field Maintenance Squadron, McChord Air Force Base, Washington, did at McChord Air Force Base, Washington, on or about 13 December 1987, commit an assault upon [J.P.H.] ... by attempting to penetrate his, the said [J.P.H.'s] anus with the said Sergeant Nathaniel Johnson, Jr's. penis, with a means likely to produce death or grievous bodily harm, to wit: the Human Immunodeficiency Virus, in that before on or about 13 December 1987, the said Sergeant Nathaniel Johnson, Jr. was infected with the Human Immunodeficiency Virus and knew he was so infected.

## Aggravated Assault

The proper charging of AIDS-related misconduct has been a lively topic of debate. The range of possibilities is wide, from attempted murder [1] to assault [2] and it

1. *See People v. Richards,* No. 85–1715–F4 (68th Jud.Dist.Ct.Mich.) (AIDS victim spat on officer;

encompasses the possibility of pleading AIDS as an aggravating factor in such crimes as sodomy or adultery. *See generally United States v. Sargent,* 18 M.J. 331 (C.M.A.1984), and Wells–Petry, *Anatomy of an AIDS Case: Deadly Disease as an Aspect of Deadly Crime,* Army Lawyer, January 1988, p. 17, 20ff. At least six courts-martial have been convened based upon AIDS-related assaults. *See* N.Y. Times, April 19, 1988 at Z6. In military jurisprudence, lessons in how to charge violations are found in both our own *Womack* case cited above and *United States v. Woods,* 27 M.J. 749 (N.M.C.M.R.1988). There, the Navy–Marine Court granted a Government appeal under Article 62, UCMJ, 10 U.S.C. § 862 permitting a court-martial to go forward for unprotected male-female intercourse after the accused had been cautioned that he carried the HIV virus; the Navy offense was charged under Article 134, UCMJ, 10 U.S.C. § 934. *See also United States v. Morris,* 25 M.J. 579 (A.C.M.R.1987) (results of AIDS test should not have been suppressed by military judge at trial level).

■ We have no hesitation in concluding that certain HIV-related sexual acts are properly chargeable under Article 128, UCMJ. Since the proposition of "assault by AIDS virus" may appear novel at first glance, we will analyze it in some detail *vis-a-vis* the specific crime of aggravated assault with a means likely to produce death or grievous bodily harm.

1. *Means.* Did the accused use a *means* likely to produce death or grievous harm? We so hold. Commentaries on assault, either criminal or tortious, reveal that the term "means" appears to include almost anything used in a way that could cause death or injury. Under civilian law, such items as a spatula, an aggressive dog which is "sic'd" on someone, or even exposure to the weather have been held actionable. *See generally* 6 Am.Jur.2d *Assault and Battery* Sec. 53 (1963). In military law, such disparate items as a meat fork, tape recorder, cowboy belt, or a United States Marine recruit are "means" if used in the requisite way.[3] Viewed in light of these precedents, we are convinced that semen carrying the HIV virus indeed can be a "means" to commit aggravated assault. Our position is strengthened by numerous cases which have sustained claims of assault in an intimate setting when the perpetrator knowingly has spread venereal disease or herpes, or has falsely claimed he had a vasectomy.[4]

The law is developing rapidly in this area. When charging the offense, pinpointing the precise means employed by the accused to commit the assault can be difficult. In this complicated case, we believe a more accurate specification would have charged the accused with aggravated assault by attempting to penetrate the vic-

---

charged with attempted murder). *See also State v. Phillips,* a South Carolina case, cited in Aids Policy & Law, October 7, 1987, p. 6.

**2.** *See United States v. Moore,* 669 F.Supp. 289 (D.Minn.1987), *aff'd.,* 846 F.2d 1163 (8th Cir. 1988) (assault with a deadly weapon, mouth and teeth of AIDS carrier) and *United States v. Kazenbach,* 824 F.2d 649 (8th Cir.1987) (defendant, who had AIDS, bit, scratched, and spat upon a prison correctional officer). *See also Barlow v. Superior Court,* 190 Cal.App.3d 1652, 236 Cal. Rptr. 134 (1987).

**3.** See the cases gathered at Wells–Petry, *Anatomy of an AIDS Case: Deadly Disease as an Aspect of Deadly Crime,* Army Lawyer, January 1988 at 23.

**4.** Cases where the perpetrator spread the herpes virus to unsuspecting victims and was held lia-

ble are *B.N. v. K.K.,* 312 Md. 135, 538 A.2d 1175 (1988) (herpetic defendant never told plaintiff of his condition; court found defendant knowingly engaged in conduct likely to infect others when he was aware of his infirmity; numerous cases analyzed) and *Kathleen K. v. Robert B.,* 150 Cal.App.3d 992, 198 Cal.Rptr. 273, 276–277 (2d Dist.1984) (any possible consent vitiated by fraudulent concealment). For prosecutions for assault where the defendant had venereal disease, *see State v. Lankford,* 6 Boyce 594, 29 Del. 594, 102 A. 63 (1917) and *Richard H. v. Larry D.,* 198 Cal.App.3d 591, 243 Cal.Rptr. 807 (1st Dist. 1988). Finally, for a case where the defendant told the prosecutrix he could not impregnate her because he had had an operation, *see Barbara A. v. John G.,* 145 Cal.App.3d 369, 193 Cal.Rptr. 422, 432–433 (1st Dist.1983) (also cites Delaware, North Carolina, and Texas cases concerning assault by males having a venereal disease). *See generally* Annot., 40 A.L.R.3d 1089 (1980) for an exhaustive listing of cases.

tim's anus with *semen.* The type of aggravated assault charged here is an "attempt-type" assault rather than an "offer-type;" it therefore requires a specific intent. *See* MCM, 1984, Part IV, paragraph 54 c(1)(b)(i). Here, the intent of the accused was to gain sexual gratification by releasing semen. His semen carried the HIV infection and was the vehicle or "means" potentially causing harm or death. As to this matter, we discern no prejudice to the rights of the accused in the way the offense was charged. He was clearly on notice as to what was alleged against him. *See* R.C.M. 307(c)(3) and *United States v. Durham,* 21 M.J. 232 (C.M.A.1986).

2. *"Used."* This means was "used" when the accused placed his penis near the victim's anus seeking sexual gratification. Through unprotected sexual coupling, he could well have deposited the HIV virus inside his victim's body, thus "using" the semen in a deadly or harmful way. As one writer puts it, such sexual conduct can be analogized to attempting to put poison in the drink of a victim.[5]

3. *Death or Grievous Bodily Harm as a Likely Result.* We are confident that the means was used in a manner so that death or grievous bodily harm would be a likely result. How likely is "likely?" No statistical model can predict the precise degree of danger sufficient to sustain a conviction. We are satisfied, however, that the expert testimony at trial adequately developed a degree of probability sufficient for a valid conviction. *See United States v. Baker,* 24 M.J. 354, 356 (C.M.A.1987). It appears beyond dispute that AIDS is a chilling disease; as one New York court puts it, "[A]t no time in recent history has there been an issue capable of causing such anxiety and fear." *Anne D. v. Raymond D.,* 139 Misc.2d 718, 528 N.Y.S.2d 775 (1988). We reason that it is unnecessary that death or serious bodily harm be actually inflicted to uphold a conviction for aggravated assault. *See* MCM, 1984, Part IV, paragraph 54 c(4)(a)(iv); *see also United States v. Schroder,* 47 C.M.R. 430, 434 (A.C.M.R.1973) (exposure to grenade; injury or death "could result").[6]

4. *Knowledge.* The accused had been counseled in depth at Wilford Hall; he was aware that his semen was highly likely to contain the HIV virus and that he could transmit a deadly disease to others with whom he might have intimate sexual conduct.

5. *Overt Acts Beyond Mere Preparation.* Did the accused's activity extend beyond "mere preparation" as that term is used in the Manual for Courts–Martial at paragraph 54 c(1)(c)(i)? Yes. We believe it clear that the accused intended to have anal intercourse with J.P.H. It follows that he attempted to put "infected semen" inside the victim's anus. Factually, he was prevented from so doing when: (a) J.P.H. tightened his anus to stop the attempt; and (b) J.P.H.'s drunkenness and vomiting caused the accused to lose interest. *See United States v. Byrd,* 24 M.J. 286 (C.M.A. 1987), and *United States v. Powell,* 24 M.J. 603 (A.F.C.M.R.1987). Based upon the record, we are convinced that the accused committed overt acts toward sexual union that were sufficient to constitute a criminal attempt. *See generally* MCM, 1984, Part IV, paragraph 54 c(1)(c)(i).

6. *Consent.* It was argued at trial that J.P.H. consented to sexual acts with the accused. The defense noted the unique nature of assault by means of sexually transmitting a virus and likened it to other sexual offenses between adults. The defense then argued that if there was consent, the accused could not be guilty. We find this argument unpersuasive. In the first place, the victim's "consent" was uninformed; he did not know his partner was infected. Furthermore, regardless of con-

---

5. See Wells–Petry, *supra,* at 23–24.

6. One commentator has likened the victim of an HIV assault to an individual handcuffed to a briefcase full of explosives. The briefcase may never explode, or it may explode and maim the victim, or it may kill. *See* Wells–Petry, *supra,* at

23. The analogy can be extended a step further. If the assailant does not inform the victim of his infection, it is as if the victim is handcuffed to the briefcase but does not even know the potentially-lethal briefcase is there!

sent, the military judge correctly found that consent by the victim is not a valid defense when the conduct is of a nature to be injurious to the public as well as to the party assaulted. *See United States v. Holmes*, 24 C.M.R. 762 (A.F.B.R.1957); *United States v. Woods, supra;* Annot., 58 A.L.R.3d 662 (1974); *see also* Binson, *Law, Social Policy, and Contagious Disease: A Symposium on Acquired Immune Deficiency Syndrome (AIDS): AIDS and the Criminal Law: Traditional Approaches and a New Statutory Proposal*, 14 Hofstra L.Rev. 91 (Feb.1985). We too find no valid consent here: Whatever the degree of assent to sexual by-play between the individuals, there was no approval by the victim to transmission of the AIDS disease.[7]

### Constitutionality

The accused at trial urged the military judge to dismiss the aggravated assault specification on the basis that it was void for vagueness and violative of his Constitutional right of due process; the argument was premised on the contention that the accused was never informed that failure to follow the Wilford Hall counselings might lead to disciplinary action. In the defense view, this denied Sergeant Johnson fair notice that his conduct could be criminal due to his status as an HIV carrier.

■ We reject the accused's constitutional argument that the aggravated assault offense is vague since he was neither ordered to engage solely in "safe sex" nor counselled that future sexual conduct might subject him to prosecution. He is not charged with failure to obey an order, but with aggravated assault under Article 128, UCMJ. An argument based on due process and fair notice, simply stated, is inapplicable to the offense of assault. There is no vagueness as to assault; the accused knew he carried the AIDS virus and that unprotected sex could harm his partner.

■ Moreover, we accept without reservation the proposition that the Air Force may impose reasonable regulation on sexual relations of servicemembers infected with AIDS. *See United States v. Womack* and *United States v. Woods*, both *supra.* For HIV-positive airmen who are sexually active, regulation is clearly warranted. *See generally Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974) (unique needs of military society).

### Sufficiency of Evidence

■ The appellate defense brief strongly urges that the record is insufficient to support conviction of these offenses. We have most carefully analyzed the record, particularly the testimony of the various agents of the Office of Special Investigations, the accused, and J.P.H. We conclude that there is ample evidence to support the military judge's findings of guilty and his special findings on the aggravatged assault charge, including his conclusion that the accused did not use a condom in his relations with J.P.H. Like the trial judge, we are convinced beyond a reasonable doubt that the accused is guilty of these offenses. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R.1986) and *United States v. Carr*, 25 M.J. 637 (A.C.M.R.1987).

### Multiplicity

■ The accused argues that the offenses of consensual sodomy by committing fellatio and of attempted anal sodomy (Charges I and II) are multiplicious for sentencing. Although the matter is not without some authority on either side, we believe the better view is that these two offenses are not multiplicious for sentencing. *See United States v. Cox*, 18 M.J. 72, 74 (C.M.A.1984); *United States v. Zeigler*, 14 M.J. 860 (A.C.M.R.1982) *pet. denied*, 15 M.J. 461 (C.M.A.1983); and *United States v. Dearman*, 7 M.J. 713 (A.C.M.R.1979).

7. One might look to standard tort analysis for a useful methodology to understand assault by HIV virus. Thus, the elements of duty; its breach; proximate causation; and assessment of damages, either punitive or financial, can be helpful. "Foreseeability" is another legal concept which can be employed in analysis. *See United States v. Henderson*, 23 M.J. 77, 79–80 (C.M.A.1986).

*But see United States v. Langford,* 15 M.J. 1090, 1094 (A.C.M.R.1983).

 We find it necessary to deal with another aspect of multiplicity in this case. At trial, the military judge found attempted anal sodomy and aggravated assault by means of the AIDS virus (Charges I and III) multiplicious for sentencing. We concur. However, the military judge did not address whether they are multiplicious for *findings.* We believe they are indeed multiplicious for findings. *See United States v. Baker,* 14 M.J. 361, 367 (C.M.A. 1983) and *United States v. Armusewicz,* 16 M.J. 418 (C.M.A.1983) (Sum.Dis.); *see also United States v. Demmer,* 24 M.J. 731, 736 (A.C.M.R.1987) and *United States v. Meade,* 19 M.J. 894, 895 (A.C.M.R.1985). We reason that the accused's criminal conduct is most accurately reflected by Charge III. We recognize that this is one of those rare situations where the matter which on its face appears the more serious (Charge III) carries a lesser maximum punishment than the alternative in Charge I. MCM, Part IV, paragraphs 51 e(3) and 54 e(8)(b) (1984). Nonetheless, we are persuaded that Charge III is the more accurate representation of what the accused did. See also MCM, Part IV, paragraph 4 c(5)(f) (1984). We order Charge I and its specification dismissed.[8]

## Sentence

 Based on his evaluation of multiplicity, the military judge found that the maximum punishment available was a dishonorable discharge, total forfeitures, reduction to airman basic, and ten years of confinement. The military judge sentenced the accused to the maximum punishment allowed.

Under the circumstances the military judge applied an incorrect maximum pun-

ishment. As we understand it, the military judge concluded that there was a 10 year maximum in this case based upon a combination of two criminal actions: (1) the sodomy by fellatio under Article 125 (Charge II); and (2) the attempt to commit sodomy by anal sex under Article 80 (Charge I). Since we find that Charge I has been subsumed within Charge III, it follows that the Charge III maximum is the one applicable here, i.e., a maximum of three years of confinement, dishonorable discharge, and accessory penalties. In short, the correct maximum available in this case was eight years—five years under Charge II, and three years under Charge III.

Based on the correct maximum punishment available of eight years of confinement, we will reassess. The record generally reflects a pathetic attempt at consensual homosexual contact. No force was used, and we can imagine far more aggravating circumstances on similar facts. Accordingly, we find appropriate only so much of the sentence as extends to a dishonorable discharge, total forfeitures, reduction to airman basic, and six years confinement.

Before concluding, we commend all advocates involved with this complex case. The case was well tried and well defended, and the appellate briefs were excellent.

The findings of guilty and the sentence, as modified, are

AFFIRMED.

Senior Judge LEWIS and Judge BLOMMERS concur.

---

**8.** We pause to note another irony as to findings and sentence. At trial, the military judge found the accused not guilty of an Article 134 offense of assault with intent to commit sodomy. We surmise he did so because of the exigencies of proof and not because the charge was unproven. That offense carries a maximum of 10 years confinement. Charge II under Article 125 carries a five year maximum. Thus, under an alternative method of pleading, the maximum possible in the case could have been 15 years.