UNITED STATES, Appellee,

v.

Nathaniel JOHNSON, Jr., Sergeant, U.S. Air Force, Appellant.

No. 61,753.
ACM 26812.

U.S. Court of Military Appeals.

April 12, 1990.

For Appellant: *Major Lynne H. Wetzell* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Major Terry J. Petrie* (argued); *Colonel Joe R. Lamport* (on brief); *Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial before a military judge alone for knowingly exposing a 17–year–old male to the Human Immunodeficiency Virus (HIV). It was established at trial that HIV is the disease-causing, viral agent in the incurable, fatal illness called AIDS (Acquired Immunity Deficiency Syndrome). After mixed pleas, he was found guilty of attempted consensual sodomy, consensual sodomy, and assault with a means likely to produce death or grievous bodily harm, to wit: attempted anal intercourse while knowingly infected with HIV, in violation of Articles 80, 125, and 128, Uniform Code of Military Justice, 10 USC §§ 880, 925, and 928, respectively. He was sentenced to confinement for 10 years, total forfeitures, reduction to E–1, and dishonorable discharge. The convening authority approved the sentence as adjudged. The Court of Military Review approved the findings, but reduced the confinement to 6 years. 27 MJ 798, 805 (1988).[1]

After reviewing appellant's supplement to his petition, this Court specified two issues for consideration:

I

WHETHER A SPECIFICATION ALLEGING AGGRAVATED ASSAULT WITH A MEANS LIKELY TO PRODUCE DEATH OR GRIEVOUS BODILY HARM, TO WIT: THE HUMAN IMMUNODEFICIENCY VIRUS, ALLEGES AN OFFENSE UNDER THE UNIFORM CODE OF MILITARY JUSTICE.

II

WHETHER THE EVIDENCE IS SUFFICIENT TO SUSTAIN A VALID CONVICTION IN THE PRESENT CASE.

In September 1987, while attached to McChord Air Force Base, Washington, appellant learned that he had tested positive for HIV. He was sent to Wilford Hall Medical Center, Lackland Air Force Base, Texas, for evaluation. Appellant's out-patient medical treatment included extensive counseling, and he was provided with information regarding the dangers of transmitting HIV. He then returned to McChord AFB.

On the evening of December 13th, while driving in downtown Tacoma, Washington, appellant met JPH, a 17–year–old male, and offered him a ride home. During the drive, appellant and JPH agreed to buy beer and return to appellant's barracks room at the base.

Once in appellant's room, JPH drank several beers as well as a number of mixed drinks made with bourbon. Appellant and JPH engaged in petting and kissing, and appellant eventually performed consensual fellatio on JPH. Appellant then attempted to insert his finger into JPH's anus, but

---

1. The Court of Military Review found attempted anal sodomy and aggravated assault by means of the AIDS virus (Charges I and III) multiplicious for findings, "reason[ing] that the accused's criminal conduct is most accurately reflected by Charge III," which "carries a lesser maximum punishment than the alternative in Charge I." Charge I and its specification were dismissed. 27 MJ 798, 804–05 (AFCMR 1988).

"[T]he correct maximum [confinement] available" here "was eight years—five years under Charge II and three years under Charge III." We express no opinion on the correctness of this conclusion. Reassessing the sentence, the court found "appropriate only so much of the sentence as extend[ed] to a dishonorable discharge, total forfeitures, reduction to airman basic, and six years confinement." *Id.* at 805.

JPH objected; appellant stopped.[2] At that point, JPH was very intoxicated, so much so that he vomited three times. Appellant then laid on top of and beside JPH, and he "just laid ... [his penis] around" JPH's anus. Appellant admitted that it was his original intent to have anal intercourse with JPH, but he claimed he never attempted to do so. In appellant's own words, after JPH vomited, appellant "lost interest." JPH agreed that appellant never actually tried to penetrate his anus with his penis.[3] JPH testified that appellant was not wearing a condom, but appellant claimed that he was. Appellant and JPH apparently left the barracks room on amicable terms, although JPH reported the episode to authorities the next day. JPH testified that if he had known appellant was infected with HIV, he never would have consented to any contact with him.

Lieutenant Colonel Richard E. Winn, U.S. Air Force Medical Corps, testified extensively as a medical expert for the Government. Dr. Winn described in detail how the Human Immunodeficiency Virus is transmitted. According to Dr. Winn, there is up to a 35 percent probability that an individual who tests positive for HIV will develop AIDS. In turn, the mortality rate for those testing positive for AIDS is presently 50 percent.[4] Dr. Winn also stated that the most dangerous transmission of HIV occurs through intravenous drug use and unprotected sexual intercourse, both heterosexual and homosexual. He indicated that the risk of transmission is increased "if one participates in anal intercourse" or if either of the partners "have genital ulcers, or ulcerations, or tears." Dr. Winn did testify that physical contact such as actually occurred in this case is

"unlikely" to cause transmission of the AIDS virus.

Based upon this evidence, the military judge found that appellant had committed an assault with means likely to produce death or grievous bodily harm. Through special findings pertinent to Charge III and its specification, the military judge stated:

[S]pecifically ... *the accused attempted to have anal intercourse with ... [JPH]*. The accused was infected with the Human Immunodeficiency Virus at the time of the attempt ..., and he knew that he was so infected. I [the military judge] did not believe the accused's testimony that he used a condom.

[T]he accused attempted with unlawful force or violence to do bodily harm to ... [JPH] with the specific intent to do bodily harm. The accused's acts in lying naked on the back of ... [JPH] with his penis at or near the anus ... amounted to more than mere preparation and were done with the apparent present ability to do bodily harm....

[U]nlawful force or violence ... exist in this case because there is no legal justification or excuse for the acts. Further, there can be no lawful consent by a victim to this type of assault....

[T]he specific intent involved here is a specific intent to do bodily harm.... [S]ee paragraph 54c(1)(b)(i) at page ... IV–95 of the Manual for Courts–Martial. Bodily harm means any physical injury to or offensive touching of another person, however slight.... [A]ny rational person would find it offensive to be touched by the Human Immunodeficiency Virus.

[T]he natural and probable consequence of the acts attempted by the accused would be the touching of ... [JPH's

---

**2.** The record indicates that appellant engaged in other sexual acts with JPH, and that he had been advised that, although such practices did not constitute a high risk of transmitting the AIDS virus, they were not considered "safe sex."

**3.** By both parties' account, appellant never attained full erection.

**4.** Other experts project "that 95% to 99% of those persons infected with HIV will develop

the AIDS disease eventually." Sinkfield and Houser, *AIDS and The Criminal Justice System*," 10 Journal of Legal Medicine 103, 105 n.7 (No.1 1989). While statistics such as these highlight the dangers of the virus if it is transmitted, aggravated assault still requires that the accused use or attempt to use the means in a manner likely to cause death or grievous bodily harm.

body] by the Human Immunodeficiency Virus.

\* \* \* \* \* \*

I have considered the testimony that not every act of unprotected anal intercourse results in transmission of ... [HIV], and I have considered the testimony that not everyone who is infected with the virus dies or suffers grievous bodily harm. However, given the available medical testimony, I conclude that the ... [HIV] is a means which is likely to produce death or grievous bodily harm.

(Emphasis added.)

### I

 With respect to issue I, it is now beyond cavil that it is permissible under the Code to charge aggravated assault, where the means alleged as likely to produce death or grievous bodily harm is HIV. *See United States v. Stewart*, 29 MJ 92 (CMA 1989); *United States v. Womack*, 29 MJ 88 (CMA 1989); *United States v. Woods*, 28 MJ 318 (CMA 1989). An offense so charged is not void for vagueness. Appellant was provided adequate notice that he could be held criminally liable for consensual sodomy with another person, military or civilian, male or female. *See Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed. 2d 439 (1974).[5] It is well-recognized that the military services and society at large have a compelling interest to ensure that those who defend the nation remain healthy and capable of performing their duty. *United States v. Womack, supra* at 90 (citing *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 1396, 103 L.Ed.2d 685 (1989)). Further, sodomy, consensual or otherwise, is not constitutionally protected conduct within the military. *United States v. Sco-*

*by,* 5 MJ 160 (CMA 1978); *United States v. Jones,* 14 MJ 1008 (ACMR 1982), *pet. denied,* 15 MJ 456 (1983).[6] Lastly, appellant's claim that he was denied fair notice that his semen or blood contained the means to inflict death or grievous bodily harm would leave any jurist incredulous. Once appellant tested positive for HIV, medical personnel made him overtly aware of the dangers of transmitting the virus should he have unprotected sexual contact with another person. This was substantiated by Dr. Winn and by appellant's own testimony. We are satisfied that alleging aggravated assault under these circumstances does state an offense and that it is constitutionally permissible to charge such an offense under the Uniform Code.

### II

Turning to the second issue, we note that Article 128 sets out four elements for the offense of assault with a means likely to produce death or grievous bodily harm. The Manual for Courts–Martial identifies these elements as follows:

(i) That the accused *attempted* to do, offered to do, or did bodily harm to a certain person;

(ii) That the accused did so with a certain weapon, means, or force;

(iii) That the attempt, offer, or bodily harm was done with unlawful force or violence; and

(iv) That the weapon, means, or force was used in a manner likely to produce death or grievous bodily harm.

Para. 54*b* (4)(a)(i)-(iv), Part IV, Manual for Courts–Martial, United States, 1984 (emphasis added).

The first element of aggravated assault can be satisfied by a mere attempt, *i.e.,* "[t]hat the accused *attempted* to do ...

---

**5.** The Court of Military Review noted that the criminal and civil law are changing rapidly in AIDS cases, and it opined that "a more accurate" pleading in this case would have been that appellant's semen, which carried the AIDS virus, was the "means likely to produce death or grievous bodily harm." 27 MJ at 802–03. Whether the means was alleged to be the virus itself, or the medium and the virus, does not seem signif-

icant to us. Even if it was, we agree that appellant was not prejudiced by the pleadings at trial and that he had adequate notice as to what was alleged against him. *Cf. United States v. Durham,* 21 MJ 232 (CMA 1986).

**6.** *Cf. Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986).

bodily harm to" a person. Although appellant testified that he did not attempt to penetrate JPH's anus with his penis, it is difficult to imagine how much further appellant would have had to go to commit an overt act constituting an attempt. *See* para. 54c (1)(b)(i), Manual, *supra*. Indeed, the military judge specifically found appellant guilty, beyond a reasonable doubt, of the offense of attempted anal sodomy. *See* n. 1, *supra*. Moreover, the military judge expressly stated his disbelief of appellant's claim that he wore a condom (which would have protected JPH from transmission of the virus). The judge heard the evidence and observed the demeanor of the witnesses. As this Court is limited by Article 67(d), UCMJ, 10 § 867(d), "to matters of law," we are precluded from setting aside the military judge's findings of fact in light of the substantial evidence of record supporting those conclusions. *Cf. United States v. Hicks*, 24 MJ 3, 6 (CMA), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987).

▮ The *actus reus* of the crime, however, also requires conduct which goes beyond a simple offer of bodily harm. *See United States v. Stewart, United States v. Womack, United States v. Woods*, all *supra*. It is not necessary that such conduct actually cause death or grievous bodily harm, so long as the means employed is "used in a manner *likely* to produce ... [such] harm." (Emphasis added.)[7] Evidence of record sufficiently demonstrates

that appellant's semen containing HIV was certainly a means capable of transmitting a deadly disease, thus producing death or grievous bodily harm. Moreover, the evidence shows that, in this era of heightened awareness and concern regarding the dangers of transmitting HIV, both the military and civilian communities recognize that, under many circumstances, AIDS is "the *natural and probable consequence*" of exposure to HIV. *United States v. Stewart, supra* at 93 (emphasis added); *see also* para. 54c (4)(a)(ii), Manual, *supra*.

Of course, whether the conduct of the accused involves a "means ... used in a manner likely to produce death or grievous bodily harm" is a question to be determined by the factfinder. We agree with the court below that the legal question then becomes —"How likely is 'likely?'" 27 MJ at 803. Based upon our holdings in *Stewart* and *Womack*, it must at least be more than merely a fanciful, speculative, or remote possibility. The expert medical testimony which the military judge relied upon in this case was also sufficient as a matter of law in this regard. There was some competent evidence, therefore, upon which the military judge could find beyond a reasonable doubt that appellant *attempted* to do bodily harm to JPH, *i.e.*, engage in unprotected anal intercourse which would have been likely to transmit a disease which can ultimately result in death. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61

7. *See* Comment, *Deadly and Dangerous Weapons and AIDS: The Moore Analysis is Likely to be Dangerous*, 74 Iowa L.Rev. 951 (1989). *See also United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir.1988). The United States Court of Appeals for the Eighth Circuit held, *inter alia*, "that the medical evidence" of "record was insufficient to establish that AIDS may be transmitted by a bite." *Id.* at 1167-68.
The defendant, infected with AIDS, was an inmate at a federal medical facility and had intentionally bitten two corrections officers, admitting that he hoped biting the officers would cause them to contract the disease. *Id.* at 1165. The court held, however, that a human bite, irrespective of the presence of AIDS, can constitute assault with "a deadly and dangerous weapon." *Id.* at 1167. The Iowa Comment contends that because the *Moore* court held that assault

with "a deadly and dangerous weapon" occurs when the means used is "*capable* of inflicting harm," instead of "*likely* to inflict harm," 74 Iowa L.Rev. at 964 (emphasis added, footnote omitted), it will ultimately allow a lower standard of proof in aggravated-assault cases involving AIDS.
Countless analogies can be made to having unprotected sex with an AIDS-infected partner, such as being assaulted with a gun with a single chamber loaded or carrying a briefcase which, unknown to the carrier, contains a bomb. *See United States v. Johnson*, 27 MJ at 803 and n.6 (citations omitted). Suffice it to say, it is beyond cavil that, if the circumstances surrounding the sexual contact are such that HIV is likely to be transmitted, then the virus is a means likely to produce death or grievous bodily harm.

L.Ed.2d 560 (1979); *United States v. Hicks, supra.*

■ Although we are convinced that appellant was properly charged with an aggravated assault and that the elements of the offense were established in this case, we offer the following thoughts. The cases of *Stewart, Womack,* and *Woods* stand for the proposition that the military has a legitimate interest in prosecuting unprotected sexual contact which involves the risk of transmitting the AIDS virus.[8] They do not stand for the proposition that persons infected with AIDS will be criminally stigmatized and punished more severely when their conduct does not risk transmission of the virus.[9] An era of heightened awareness should not be transposed into irrational fear, particularly in criminal law, whether in the military or civilian communities. *See Wiggins v. State,* 315 Md. 232, 554 A.2d 356 (1989).

The decision of the United States Air Force Court of Military Review affirming the findings and sentence as to sodomy and aggravated assault is affirmed.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (concurring):

Appellant was found guilty of attempted anal sodomy and aggravated assault; but the Air Force Court of Military Review set aside the attempt conviction on grounds of multiplicity. Although this was a legally permissible option, I believe that, in a case like this, it would have been preferable for the Court below to have affirmed the finding of attempted sodomy, considered appellant's HIV infection as a factor in aggravation of that offense, and vacated the conviction of aggravated assault as multiplicious.

---

**8.** As indicated earlier, n.1, *supra,* the Court of Military Review held that the attempted sodomy was multiplicious for findings with the aggravated assault. This leaves open a question as to what offense, if any, appellant would have been guilty of if he had worn a condom throughout, though still not informing JPH of his infection, thereby arguably not attempting conduct which would have subjected JPH to the risk of contracting the AIDS virus.

**9.** Apparently our concern is justified. One judge reportedly moved the sentencing proceedings to the courthouse parking lot, "stat[ing] that 'lots of space and sunshine' would" reduce the risk of the defendant's infecting court personnel with AIDS; other judges have "require[d] defendants [infected] with AIDS to enter pleas and receive sentences over the phone." *See* Comment, 74 Iowa L.Rev. at 952 n.11 (authorities omitted), *cited* in n. 7, *supra.*