**UNITED STATES, Appellee,**

**v.**

**Sergeant Richard W. SARGEANT, 117–60–6081, United States Army, Appellant.**

**ACMR 8702928.**

U.S. Army Court of Military Review.

17 Nov. 1989.

---

For Appellant: Lieutenant Colonel Joel D. Miller, JAGC, Major Marion E. Winter, JAGC, Captain Brian D. DiGiacomo, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before KANE, GILLEY and GIUNTINI, Appellate Military Judges.

## OPINION OF THE COURT

GIUNTINI, Judge:

At his general court-martial, the appellant pleaded guilty to, among other offenses, two specifications of willful disobedience of a lawful order from his commander in violation of Article 90, Uniform Code of Military Justice, 10 U.S.C. § 890 (1982) [hereinafter UCMJ]. The order directed certain "safe-sex" practices because the appellant had been diagnosed as being infected with the Human Immunodeficiency Virus (HIV).[1] He was sentenced by a panel of officer and enlisted members to a dishonorable discharge, confinement for nine years, forfeiture of all pay and allowances, and reduction to Private E1. Pursuant to the terms of a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for five months, forfeiture of all pay and allowances and reduction to Private E1.

The appellant asserts that the two specifications alleging violations of his commander's "safe-sex" order fail to state an offense and are unconstitutional *per se* because they violate his constitutionally-recognized right to privacy.

In September of 1986, the appellant, as part of an Army-wide program, was tested for the presence of the HIV. His test was positive. The appellant was retested in March and again in August of 1987 and on both occasions he was diagnosed as HIV, Stage 3.[2]

Community health personnel counseled the appellant about the gravity of the test results and informed him that the AIDS virus could be transmitted by sexual intercourse. The appellant was also informed that he should warn prospective sexual partners about his diagnosis and that he should use a condom to decrease the chances of transmitting the AIDS virus to others. The appellant persisted in engaging in unwarned and unprotected sex.

On 24 April 1987, the appellant's company commander issued a written order to him which stated, in pertinent part: "[y]ou are further ordered to verbally advise all prospective sexual partners of your diagnosed AIDS, Stage III condition prior to engaging in any acts of sexual intercourse. You are also ordered to wear condoms

1. Individuals diagnosed as HIV-positive are commonly thought of as having the Acquired Immune Deficiency Syndrome (AIDS). Evidence at trial indicated that only the HIV, sometimes called the AIDS virus, may cause AIDS, but not always even though the HIV is in a person's body.

2. In the "Walter Reed Staging System," the ranges are from Stage 0 (subject exposed to individuals with the HIV, but subject uninfected) to Stage 6 (subject is regarded as having AIDS; immune system completely fails). HIV, Stage 3, signifies that the HIV has resulted in a reduction, on two consecutive evaluations, of the "T–Helper" Lymphocytes which help the body's immune system fight infection; expert testimony disclosed that an individual with HIV, Stage 3, has a thirty-five percent likelihood of developing AIDS within a seven-year period. Once the individual is diagnosed as having AIDS, there is a fifteen percent chance of survival over the next five years. Of course, these percentages may change as the medical community learns more about the disease.

should you ever engage in sexual intercourse with a partner." The appellant acknowledged receipt of this "safe-sex" order on the same day.[3]

Subsequent to the receipt of his commander's order, the unmarried appellant engaged in heterosexual intercourse on one occasion with Private B and on numerous occasions with Private H. In direct violation of his commander's order, the appellant failed to advise both soldiers of his diagnosis and elected not to wear a condom while engaging in sexual intercourse with either of them.

The appellant alleges that the order violated his constitutionally-recognized right of privacy, with no overriding demands of discipline present to justify such an intrusion into his private life. The government responds that the order was the least restrictive means available to further the compelling public health interest in arresting the spread of AIDS and, consequently, was both necessary and reasonable.

The Manual for Courts–Martial, 1984, Part IV, para. 14c(2)(a)(iii) and (iv) [hereinafter M.C.M., 1984], provides that to constitute a violation of Article 90, UCMJ, the order must relate to military duty, which—

> includes all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service. The order may not, without such a valid military purpose, interfere with private rights or personal affairs. However, the dictates of a person's conscience, religion, or personal philosophy cannot justify or excuse the disobedience of an otherwise lawful order ... [t]he order must not conflict with the statutory or constitutional rights of the person receiving the order.

Military commanders may lawfully regulate all activities of their soldiers which are reasonably necessary to safeguard and protect the morale, discipline and usefulness of the members of a command and are directly connected with the maintenance of good order and discipline, to include the regulation of activities affecting the health, safety and general welfare of the military community; however, orders which only tangentially further a military objective, are excessively broad in scope, are arbitrary and capricious, or needlessly abridge a personal right may be invalid and unenforceable. *United States v. Green*, 22 M.J. 711 (A.C.M.R.1986) (provides synopsis of case law on lawfulness of orders and regulations).

On appeal we must determine whether the order in this case has a valid military purpose and whether it conflicts with the constitutional rights of the appellant.

## A. VALID MILITARY PURPOSE

At trial the parties stipulated that after the appellant had been diagnosed as HIV-positive in September of 1986, community health personnel counseled him about the significance of the diagnosis, and informed him that the AIDS virus could be transmitted through sexual intercourse and that wearing a condom prevents transmission of the virus. After a physical evaluation in March 1987 disclosed that the appellant's medical condition had worsened, he was given additional counseling about the same concerns. Despite these warnings about the health dangers involved and prior to his commander's order on 24 April 1987, the appellant continued his sexual activities with at least one and probably several female soldiers.[4] Expert testimony at trial indicated that the AIDS virus can be transmitted through sexual intercourse between a man and a woman, that if one of

---

3. The complete order and acknowledgment thereof is at the Appendix.

4. In paragraph one of the order found at the Appendix, the appellant's commander refers to sexual contact with female "soldiers." In paragraph 7 of the Stipulation of Fact, Prosecution Exhibit Number 1, there is a reference to un-

charged acts of unprotected and unwarned "sexual intercourse numerous times with four other enlisted female soldiers during the period from January 1987 to May 1987." During the providence inquiry the appellant admitted to five sexual acts with Specialist T "[o]n or about 28 March 1987 through 24 April 1987."

the appellant's sexual partners were to develop the AIDS virus and become pregnant, there is a forty to fifty percent chance that the baby would be infected with the virus, and that the survival time for an infant so infected is approximately six months. In paragraph one of the order to appellant, the commander expressed his concern about the health and welfare of his soldiers and the impact that the appellant's sexual conduct could have on the morale and efficiency of his unit. The record of trial provides a foundation for the commander's concerns.[5] We have no doubt that the order in this case bears a rational relationship to the legitimate health care concerns of the command. The commander's order had a valid military purpose clearly relating to military duty—the health and welfare of the unit.[6] *United States v. Chadwell*, 36 C.M.R. 741 (N.B.R.1965) (order to receive inoculations upheld against claim that order was violative of personal religious convictions).

In accordance with the Manual provisions, the order given to the appellant by his commander was a reasonable one with a valid military purpose. *See United States v. Negron*, 28 M.J. 775, 778–779 (A.C.M.R.), *petition granted*, 29 M.J. 287 (C.M.A.1989). That portion of the order which required the appellant to inform his prospective sexual partners of his HIV,

Stage 3, diagnosis "merely establishes a reasonable, common sense requirement for notice to others with whom the recipient intends to become intimately engaged."[7] *United States v. Womack*, 27 M.J. at 633. Also, the protection portion of the order "contemplates necessary precautionary measures to limit the spread of the virus incident to intimate bodily contacts." *United States v. Womack*, 27 M.J. at 634; *see generally, Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) (state through its police power can force its citizens to receive smallpox vaccinations).

## B. CONSTITUTIONAL RIGHT OF PRIVACY

The appellant contends that his commander's order was in violation of his constitutional right of privacy, *i.e.*, his right to engage in consensual, private, intimate heterosexual relations with another. While the United States Constitution does not expressly mention or enumerate a right to privacy, the courts have recognized the right of married and unmarried persons to privacy in matters of sexual intimacy.[8] *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (state statute which makes criminal the use of contraceptives by a married couple is invalid as invading the married couple's right to

5. During presentencing, expert testimony established that Private H was one of the victims seen by the Chief of Preventive Medicine at the local U.S. Army Hospital. Private H was pregnant, though by whom was not brought out at trial. She was "extremely emotionally distraught ... had an almost panic reaction of fear that she would die of AIDS ... sobbing ... weeping ... frightened ... upset ... angry ... and was admitted ... as an inpatient—on the psychiatric ward." Testimony about the considerable deployment limitations of those infected with the AIDS virus was also presented.

6. The instant case involved an unmarried appellant's unwarned and unprotected sexual intercourse with female servicemembers. The order given is broad enough to cover the appellant's sexual activities with non-military persons. We are convinced that the military has a proper interest in taking reasonable steps to ensure that its soldiers who have the AIDS virus do not infect their sexual partners, regardless of their

status. *United States v. Womack*, 27 M.J. 630, 633 (A.F.C.M.R.1988), *affirmed*, 29 M.J. 88 (C.M.A.1989). *See generally*, Milhizer, "Legality of the 'Safe-Sex' Order to Soldiers Having AIDS," Army Lawyer, December 1988, pp. 4, 6–7.

7. A prospective sexual partner who is informed of the risks involved and who decides to give consent certainly provides a kind of consent different from that given by the unwarned female soldiers in this case. *See generally United States v. Dumford*, 28 M.J. 836 (A.F.C.M.R. 1989); *United States v. Woods*, 27 M.J. 749, 752 (N.M.C.M.R.1988), *affirmed*, 28 M.J. 318 (C.M.A. 1989).

8. The protection portion of the "safe-sex" order currently prescribed by Army Regulation does not extend to the marital relationship; the advice portion does so apply. Army Regulation 600–110, Personnel–General: Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus (HIV), para. 2–17c (11 March 1988).

privacy); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (whatever the rights of the individual to access to contraceptives might be, the rights must be the same for the unmarried and married alike). *See also United States v. Scoby,* 5 M.J. 160, 165 (C.M.A.1978) (sexual activity between a married couple in the privacy of their abode is constitutionally protected as part of the right to privacy). However, the AIDS threat to public health has resulted in a state appellate court's recognition of the need to limit some heterosexual contacts between marriage partners to avoid the transmission of the AIDS disease. *Doe v. Coughlin,* 71 N.Y.2d 48, 518 N.E.2d 536, 523 N.Y.S.2d 782 (1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 196, 102 L.Ed.2d 166 (1989) (inmate with AIDS denied conjugal visit with his wife) and *Doe v. Coughlin,* 509 N.Y.S.2d 209, 125 A.D.2d 783 (1986), *cert. denied,* —— U.S. ——, 109 S.Ct. 196, 102 L.Ed.2d 166 (1989). In addition, courts have recognized many limitations on individual rights to engage in certain sexual activities. *See generally, Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (state prohibition against consensual homosexual sodomy upheld); *United States v. Scoby,* 5 M.J. 160 (C.M.A.1978) (consensual heterosexual sodomy in a public place is an offense under Article 125, UCMJ); *United States v. Lowery,* 21 M.J. 998 (A.C.M.R. 1986), *affirmed,* 24 M.J. 347 (C.M.A.1987) (summary disposition) (officer's sexual intercourse with enlisted female constitutes offense of fraternization); *United States v. Adams,* 19 M.J. 996 (A.C.M.R.1985) (limitations on sexual relations between cadre and trainees); *United States v. Hickson,* 22 M.J. 146 (C.M.A.1986) (proscription against rape, consensual adultery and non-private acts of fornication).

Generally speaking a soldier may expect to be left alone to seek and have intimate relations with others. *United States v. Berry,* 20 C.M.R. 325 (C.M.A.1956) (private heterosexual intercourse between unmar-ried adults not a criminal offense in military). Absent specific and articulable aggravating factors, a soldier's commander has no business being concerned with such private matters. In this case, the appellant's commander knew that the appellant had been diagnosed as having the AIDS virus. He also knew that the appellant had been told by community health personnel that the virus could be transmitted through sexual intercourse and that it could be deadly. When the appellant persisted in having unprotected and unwarned sexual intercourse with female soldiers, the commander had the right and the responsibility to protect his command by ordering the appellant to take reasonable steps to try to halt the spread of the AIDS virus.[9]

Although the "safe-sex" order in this case was a reasonable one with a valid military purpose, we must consider more in evaluating the lawfulness of the order. As previously mentioned, Article 90, UCMJ, provides that a lawful order may not interfere with private rights or personal affairs without a valid military purpose. Article 90, UCMJ, further provides that an order must not conflict with the statutory or constitutional rights of the person receiving the order. The United States Supreme Court has explicitly recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the United States Constitution. *See Roe v. Wade,* 410 U.S. 113, 152–153, 93 S.Ct. 705, 726–727, 35 L.Ed.2d 147, 176–177 (1973), and cases cited therein. Although the parameters of the right to privacy have not been fully defined, it has "some extension to activities relating to marriage, *Loving v. Virginia,* 388 U.S. 1, 12 [87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010] (1967); procreation, *Skinner v. Oklahoma,* 316 U.S. 535, 541–542 [62 S.Ct. 1110, 1113–1114, 86 L.Ed. 1655] (1942); contraception, *Eisenstadt v. Baird,* 405 U.S. at 453–454 [92 S.Ct. at 1038–1039], *id.,* at 460, 463–465 [92 S.Ct. at 1043–1044] (White, J., concurring in result); family relationships, *Prince v.*

---

**9.** For a discussion of possible criminal offenses committed under similar circumstances but where no order is given *see United States v. Johnson,* 27 M.J. 798 (A.F.C.M.R.1988) and

Wells–Petry, "Anatomy of an AIDS Case: Deadly Disease as an Aspect of Deadly Crime," Army Lawyer, January 1988, p. 17.

*Massachusetts,* 321 U.S. 158, 166 [64 S.Ct. 438, 442, 88 L.Ed. 645] (1944); and child rearing and education, *Pierce v. Society of Sisters,* 268 U.S. 510, 535 [45 S.Ct. 571, 573, 69 L.Ed. 1070] (1925), *Meyer v. Nebraska,* [262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)]." *Roe v. Wade,* 410 U.S. at 152–153, 93 S.Ct. at 726–727.

The state may properly assert important interests in safeguarding health, in maintaining medical standards, and in protecting potential life.[10] *Webster v. Reproductive Health Services,* —— U.S. ——, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989); *Roe v. Wade,* 410 U.S. at 154, 93 S.Ct. at 727. The Supreme Court's decisions recognizing a right of privacy also acknowledge that some regulation in areas protected by this right is appropriate. *Roe v. Wade,* 410 U.S. at 154, 93 S.Ct. at 727. In this case, we must determine whether the goal of protecting the health and welfare of the unit from the spread of the AIDS virus conflicted in an unconstitutional way with the statutory or constitutional rights of the appellant.

The appellant asserts that the "safe-sex" order given by his commander impermissibly conflicts with his constitutionally-recognized right to engage in consensual, private, intimate, heterosexual relations with another. Our research indicates that the United States Supreme Court has never explicitly recognized a constitutional right to engage in consensual, private, heterosexual relations *per se;* neither have they rejected it. Absent unequivocal precedent, we decline to carve out a constitutional right based on those decisions of the United States Supreme Court that have recognized the right to privacy, or any other constitutional protection regarding that conduct, in limited or qualified circumstances. Moreover, we believe there is no constitutional right to have such sexual intercourse free of reasonable regulation, as here, requiring a servicemember to act prudently to protect the lives of others. Indeed, appellant's disobedience in the face of the obvious danger that his medical condition created for his sexual partners could readily result in his guilt of at least involuntary manslaughter.[11]

The appellant was ordered to verbally advise all prospective sexual partners of his diagnosed AIDS, Stage 3, condition prior to engaging in any acts of sexual intercourse. He was also ordered to wear condoms should he ever engage in sexual intercourse with a partner. The appellant was informed that failure to conform with the provisions of this order would be considered a failure to obey a lawful order. The stated purpose of the order was to minimize the health risk of the AIDS virus to other soldiers. Protecting the health and welfare of other soldiers, especially in light of the scope of the danger and the seriousness of the harm, is a goal which clearly reflects a compelling state interest. *Cf. Roe v. Wade* at 154, 93 S.Ct. at 727 (compelling state interest in safeguarding health warrants abortion regulations). Whatever privacy interest this unmarried soldier had when he engaged in unwarned and unprotected sex with two female soldiers is outweighed by the Army's compelling interest to protect the health and welfare of its personnel and the public especially in light of the scope and danger of the risk involved. *Cf. United States v. Woods,* 27 M.J. at 751 (privacy interest in private sexual intercourse is surely outweighed by the risk of infection and the calamitous results that befall the individual afflicted with AIDS, and society's interest in stemming the spread of this pernicious disease).

The findings of guilty and the sentence are affirmed.

Senior Judge KANE and Judge GILLEY concur.

---

**10.** At trial, an expert witness testified that current data suggests about a forty to fifty percent chance of transmission of the AIDS virus from mother to fetus.

**11.** Death is the ultimate harm. *See United States v. Stewart,* 29 M.J. 92 (C.M.A.1989) (testimony that there was a thirty to fifty percent chance of death resulting from exposure to HIV was sufficient to fall within rule permitting inference that means was likely to produce death or grievous bodily harm.)

APPENDIX

# DISPOSITION FORM

For use of this form, see AR 340 15, the proponent agency is TAGO.

| REFERENCE OR OFFICE SYMBOL | SUBJECT |
|---|---|
| HSHA-DDA | Restrictive Order |

| TO  SGT Richard Sargeant | FROM  Cdr, Co A, 3d Bn, AHS | DATE  24 Apr 87 | CMT 1 |
|---|---|---|---|
| | | CPT Bennett/mj/5788 | |

1. I am in receipt of information concerning alleged sexual contact with female soldiers also assigned to the U.S. Army. These allegations indicate a total lack of concern for the health and welfare of other soldiers. I have been further advised by Preventive Health, BAMC that you have been counselled strongly on several occasions of the risk you pose to others and the necessary precautions you should take to minimize the health risk to others as a result of your diagnozed AIDS, Stage III virus. I am extremely concerned about the allegations regarding your conduct and the impact they could have on the morale and efficiency of this unit.

2. The following restrictions are placed on your liberty pursuant to R.C.M. 304, MCM 1984.

    a. You are again ordered not to enter the 1st Battalion and 2d Battalion, Academy of Health Sciences area.

    b. You are ordered not to contact or meet with SP4 ▆▆▆▆▆▆▆▆▆▆.

3. You are further ordered to verbally advise all prospective sexual partners of your diagnosed AIDS, Stage III condition prior to engaging in any acts of sexual intercourse. You are also ordered to wear condoms should you ever engage in sexual intercourse with a partner.

4. If you do not understand any elements of this order you will address all questions to me. Failure on your part to conform with the provisions of this order will be considered as a violation of Article 92, UCMJ.

RICHARD J. JOCZ
CPT, MS
Commanding

I hereby acknowledge receipt of this order and understand the contents of the order.

DATE _24 April 87_

RICHARD SARGEANT
SGT, U.S. Army

**DA** FORM AUG 80 **2496**          PREVIOUS EDITIONS WILL BE USED          ☆ USGPO 198E-690-203/43549