**UNITED STATES, Appellee,**

v.

**Captain Bruce A. HALL, 264–15–9783, United States Army, Appellant.**

**ACMR 9003107.**

U.S. Army Court of Military Review.

15 Nov. 1991.

Reconsideration Denied 24 Dec. 1991.

For Appellant: Captain Brian D. Bailey, JAGC, Captain Emmett G. Wells, JAGC, Captain Mark L. Toole, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Thomas E. Booth, JAGC (on brief).

Before FOREMAN, HAESSIG and HAGAN, Appellate Military Judges.

## OPINION OF THE COURT

HAGAN, Judge:

A military judge sitting as a general court-martial convicted the appellant, based upon mixed pleas, of one specification of sodomy, and of two specifications of adultery and videotaping those acts, in violation of Articles 125 and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 933 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to dismissal and forfeiture of $1000 pay per month for three months.

The errors claimed are, first, that the specifications alleging adultery and sodomy are multiplicious for sentencing; second, that the record fails to support a finding of anal intercourse, but, instead, an act of vaginal intercourse; and third, in response to the recent opinion of the U.S. Air Force Court of Military Review which reversed the sodomy conviction of an airman, that the constitutional right of privacy extends to heterosexual, noncommercial, private acts of oral sex between consenting adults. *United States v. Fagg*, 33 M.J. 618 (A.F.C.M.R.1991).

After providing the relevant facts, we discuss and decide the legal and factual sufficiency of the record, and apply the law to the issue of multiplicity. We devote the largest part of our opinion to consideration of the constitutionality of Article 125, UCMJ, which prohibits—without exception of any nature whatsoever—sodomy.[1]

---

**1.** Article 125 provides, in part: "(a) Any person subject to this code who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is suf-

## FACTS

Appellant's wife, also an Army officer, returned to their quarters one afternoon to find a videotape cartridge near the video recorder. Believing that her husband may have recorded scenes of their children playing, she began to view the tape. The greater portion of the video vividly reveals the appellant and another woman (later determined to be the wife of a junior noncommissioned officer) engaging in sexual acts; the latter portion of the tape (which the appellant's wife did not then know; she stopped viewing the tape almost immediately) discloses the appellant having sex with still another woman. The videotaped "missionary position" scenes of intercourse with both women were the bases for the adultery and wrongful videotaping specifications. A segment of the tape depicts the appellant either engaging in vaginal intercourse by means of entry from the rear (the view urged upon the trial court and us by the appellant), or of anal intercourse (as the government counsel contend), which brought about the charge of sodomy. The appellant pleaded guilty to the adultery and wrongful videotaping of his sexual encounters with his nonmarital partners. He pleaded not guilty to sodomy. Other than the film, the only evidence about the act is the testimony of the woman involved, who admitted vaginal, but denied anal, intercourse.

## SUFFICIENCY OF THE EVIDENCE

■ The first assignment of error requires that we find whether the appellant engaged in vaginal or anal intercourse. Our responsibility and power are clear:

Under Article 66(c) of the Uniform Code, 10 U.S.C. § 866(c), the Court of Military Review has the duty of determining not only the legal sufficiency of the evidence but also its factual sufficiency. The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99

S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt.

*United States v. Turner*, 25 M.J. 324–325 (C.M.A.1987).

After many minutes of foreplay and vaginal intercourse in the "missionary" and related positions, the appellant turns his partner around so that she supports herself on her knees while the appellant enters her. But what part of her does he enter? If her vagina, he merely continues the adulterous affair with another act of "normal" sexual intercourse. If, however, he penetrates her anus, he violates Article 125. We are satisfied that the appellant entered his partner's anus, rather than her vagina, and that the standards for legal and factual sufficiency have been met.

## MULTIPLICITY

■ Appellant next asserts that the trial judge erred in failing, *sua sponte*, either to consolidate the sodomy charge with the adultery charge, or to dismiss one as multiplicious for sentencing. We need not dispose of that claim. The appellant waived this issue on appeal by failing to have asserted it at trial. *United States v. Flynn*, 28 M.J. 218 (C.M.A.1989). We specifically find, however, that, under the circumstances of this case, even if the sodomy charge were to be multiplicious for sentencing with the adultery offenses, the appellant was not prejudiced.

## THE RIGHT TO PRIVACY AND ARTICLE 125, UCMJ

■ The Air Force Court of Military Review held in *Fagg* that the constitutional right of privacy extends to heterosexual, noncommercial, private acts of oral sex between consenting adults. *United States v. Fagg*, 33 M.J. at 619. In the view of that

ficient to complete the offense." UCMJ, art. 125.

court at least, to the extent that Article 125 purports to include such acts within its prohibitive ambit, it is unconstitutional. The appellant asks us to so hold, too. We disagree; the balance of this opinion tells why.

The existence of the right to privacy is incontrovertible. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); the nature and extent of that right is far less certain. "The constitutional right to privacy has vague contours and has been in a state of flux in recent years...." *James v. City of Douglas,* 941 F.2d 1539, 1543 (11th Cir.1991).[2] We find it unnecessary to discuss in exquisite detail whether the right to privacy is as some insist, linked and limited to family and procreative acts (*see, e.g., Schochet v. Maryland,* 75 Md.App. 314, 541 A.2d 183 (Spec.App.1988), *rev'd,* 320 Md. 714, 580 A.2d 176, 184 (1990)), or whether it is, as others find it, far broader (*see, e.g., Schochet v. State,* 320 Md. 714, 580 A.2d 176, 184 (1990)).[3] What is certain to us is that our court and, more importantly, the United States Court of Military Appeals, have spoken on this issue, have spoken more than once, and, most importantly, have spoken recently, clearly, and dispositively.

The *Fagg* court remarked that the appellant in that case had engaged in the least aggravated case of sodomy theretofore to have come before that court for review. That is, the persons engaging in what we have long styled as unnatural carnal copulation in that case were all unmarried adults, participating in voluntary acts. Not only was the appellant in this case married, so was his partner in the acts for which he was convicted; and, that woman was the wife of another soldier. Thus, the appellant's reliance on the *Fagg* decision or upon its rationale is misplaced. Furthermore, inasmuch as the evidence is primarily in the form of a videotape, the "private" nature of the charged acts is disputable. *See Lovisi v. Slayton,* 363 F.Supp. 620 (E.D.Va. 1973), *aff'd,* 539 F.2d 349 (4th Cir.1976), *cert. den. sub nom. Lovisi v. Zahradnick,* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976). Finally, the appellant did not raise this issue below, permitting us to dismiss this issue on the same ground as we did that of multiplicity, i.e., that the appellant waived it. Perhaps, then, even if we were burdened by the *Fagg* decision as law which bound us, we might find that this appellant could not escape conviction by citing it. Nevertheless, given the circumstances, we deem it useful to revisit the law on privacy as it affects Article 125. This case provides, in one opinion, our view of the law on the issue in the Army.

"The term 'sodomy' was derived from the ancient city of Sodom which, according to the Bible, was destroyed by fire because of its sexual excesses and perverted practices." 3 Wharton's Criminal Law § 294 n. 69 (13th ed. 1973). "At common law, sodomy was the carnal copulation of persons in other than the natural manner, i.e., in a

---

2. The debate and uncertainty over the right to privacy are not purely American. "There has been a sort of juridical trans-Atlantic volley in privacy law ever since the serve by the Vice Chancellor in Prince Albert v. Strange. (1 Mac & G 25 (1849), 41 Eng Rep 1171, possibly the first English decision to use the term 'right to privacy'.) Until the European Commission and Court of Human Rights joined in on this side most of the smashes were coming from the United States, in the form of common law and statutory torts of invasions of privacy, and the constitutional right to privacy declared in *Griswold* ...." J. Michael, "Homosexuals and Privacy," 138 *New L.J.* 831 (11 November 1988).

3. We share Judge James's admiration for the scholarship and legal acumen of Judge Moylan of the Court of Special Appeals of Maryland. See the dissent in *Fagg,* 33 M.J. at 621 (A.F.C.M.R.). Judge Moylan's analysis of the development of the law of privacy and its state (at least up to the issuance of the first *Schochet* opinion in 1987 (*Schochet v. Maryland,* 75 Md. App. 314, 541 A.2d 183 (Spec.App.1988), *rev'd* 320 Md. 714, 580 A.2d 176, 184 (1990))) is illuminating. The Court of Appeals of Maryland, while similarly impressed, was unpersuaded. Upon appeal, the majority of that court found the Maryland statute "does not encompass consensual, noncommercial, heterosexual activity between adults in the privacy of the home." *Schochet v. State,* 320 Md. 714, 580 A.2d at 184 (1990). The analyses of the law of the right to privacy as it affects sodomy in those opinions are useful because they involved heterosexual sodomy, and, in particular, "private, noncommercial, sexual behavior between consenting, unmarried, heterosexual adults." *Schochet v. Maryland,* 541 A.2d at 184.

way which was against nature." 3 Wharton's Criminal Law § 295 (13th ed. 1973). We need not trace the development of the law of sodomy in civilian law or the military from the Cinquecento through Winthrop to the present day, as fascinating as such an inquiry might be.[4] At the same time, there seems to be little to find in the development of our military law (at least with the time one may spend in research without immersion) to indicate that sodomy was the subject of ordinary criminal sanction within our army until this century. Crimes against nature were probably as known and as unspeakable in the ranks as in civilian life. Winthrop does not mention sodomy in his great treatise, either as a separate article or as an example of offenses within the ambits of Articles 61 and 62 of the 1874 Articles of War, counterparts of our present day Articles 133 and 134. W. Winthrop, *Military Law and Precedents* *710–733 (2d ed. 1896 & reprint 1920). That may be, however, because of the apparent practice to discharge summarily soldiers "guilty of bestial offenses" without trial, and without honor. By the turn of the twentieth century, that approach seems to have been fading. *See* JAG C.20615, Aug. 13, 1907, summarized in the 1912 Digest of Opinions of the Judge Advocate Generals of the Army among opinions pertaining to the 62d Article of

War of 1874, i.e., "Crimes and disorders to prejudice of military discipline." By 1912, at least, sodomy, while no less detestable, was becoming more speakable. Thus, such acts are described in the 1912 digest synopsis as, "Offenses against nature." *Id.* at 115.[5]

Article 93 of the 1920 Articles of War—the first complete revision since 1874—denounced "various crimes" by name, including sodomy. Article 93, 1920 Articles of War, Act of June 4, 1920, 41 Stat. 787.[6] The 1948 Articles of War, which were actually only amendments to the 1920 articles, continued that treatment.[7] Finally, with the passage of the UCMJ in 1950, sodomy was separately proscribed as Article 125.

Article 125 has been litigated. *See, e.g., United States v. Hooper,* 26 C.M.R. 417 (C.M.A.1958). But the first reported attack upon the present Article 125 on, among other grounds, the constitutional issue of privacy, appeared in *United States v. Scoby,* 5 M.J. 160 (C.M.A.1978).[8] Private Scoby engaged in sexual acts with another soldier of the same sex in a barracks, described "as a 'semi-private living area' encompassing 'two four-man bays, divided by a partial cement partition.' The defense concedes that four to seven other others were 'present in their bunks,' but it contends that all were asleep. However, there

---

4. G. Norman Lieber, Judge Advocate General of the Army, 1895–1901, and Acting Judge Advocate General from 1881–1895 during the Swaim troubles (for more on that unpleasant episode in our legal history, see Wiener, *American Mutiny Law in the Light of the First Mutiny Act's Tricentennial,* 126 Mil.L.Rev. 1, 20–21 (1989)), once wrote that he "would disclaim the intention of conveying the idea that a *direct* practical advantage may be attained by following our military law back into the mists of the Middle Ages. To that extent it possibly has an historical value only." G.N. Lieber, *Remarks on the Articles of War and Common Law Military,* 1 J.Mil. Services Institution U.S. 86 (1879) (emphasis in original).

5. Sodomy may also have arisen in fraternization cases, and been so charged. *See* Carter, *Fraternization,* 113 Mil.L.Rev. 61, 76 n. 92 (1986).

6. "ART. 93. Various Crimes. Any person subject to military law who commits manslaughter, mayhem, arson, burglary, housebreaking, robbery, larceny, embezzlement, perjury, forgery,

sodomy, assault with intent to commit any felony, assault with intent to do bodily harm with a dangerous weapon, instrument, or other thing, or assault with intent to do bodily harm, shall be punished as a court-martial may direct." Article 93, 1920 Articles of War, Act of June 4, 1920, 41 Stat. 787.

7. Article 93 of the 1948 Articles of War was identical to its 1920 predecessor with the exception of deleting embezzlement on the grounds that it was difficult for non-legal personnel to distinguish it from larceny. 41 Stat. 787, as amended by Act of June 24, 1948, 62 Stat. 627. *See also,* L. Alyea, Military Justice Under the 1948 Amended Articles of War 57 (1949).

8. Appellant Scoby attacked his conviction on three theories: that Article 125 was unconstitutionally vague; the right to privacy protected the charged act; and fellatio was not included within the meaning of sodomy under Article 125. He failed in all three.

is testimony from which it could reasonably be inferred that others in the bay were in bed but not asleep; two witnesses testified that they actually observed the act." *Id.* at 164. Judge Cook wrote the lead opinion; Judge Perry concurred in the result; Chief Judge Fletcher also concurred in the result, but "disassociate[d himself] from any overstatements made in the principal opinion which exceed the specific facts of this case." *Id.* at 166. As for the vagueness claim, Judge Cook found "that the conduct prohibited by Article 125 is sufficiently defined as to be understood by a person of ordinary intelligence in the military community and is, therefore, not unconstitutionally vague." *Id.* at 163. Judge Cook was less comfortable with the status of the law on the constitutional right to privacy, but concluded for the Court:

> Here, it suffices that we record our agreement with the general rule, and leave to a case directly involving a married couple consideration of whether the exception[9] exists and can properly be applied to the military community.[10] *We hold that Article 125, facially and as applied, does not trench upon the constitutional right of privacy by forbidding unnatural or deviant sexual intercourse between adults in private.*

*Id.* at 166 (emphasis added).

A little more than four years after *Scoby,* our court had the occasion to consider the "constitutionality of Article 125, UCMJ, as it applies to consensual sodomy between adults of the opposite sex." *United States v. Jones,* 14 M.J. 1008, 1009 (A.C.M.R.1982), *petition denied,* 15 M.J. 456 (1983). In *Jones,* the appellant was convicted of sodomy and aggravated assault. The appellant and his girlfriend, Sandra, were enlisted cooks in a dining facility. The appellant visited Sandra in her barracks room one evening.

They argued, [the appellant] called [Sandra] to bed, spread her legs apart and forced her 'to have sex with him.' When she started to cry, he began slapping her, putting his hand over her mouth and kept telling her to 'shut up.' At his command they had sex on the floor and once again on the bed. When Sandra was not 'moving fast enough for him,' he hit and dragged her around. The 'sex' included 'missionary, ... and then he made me have oral sex with him, and he did it to me, both on the floor and the bed.' Appellant threatened to kill her if she bit his penis.

*Jones,* 14 M.J. at 1009. The appellant stuffed a sock, towels, and undershirts in Sandra's mouth to keep her from making noise; he attempted anal intercourse, but apologized and desisted when she screamed. He attempted to tie one of her legs to a bedpost, but failed. The appellant then put his "partner" on the floor, tied her hands behind her back, and had sex with her again. "As if that were not enough, he poured a bottle of alcohol on a towel and twice put that over her mouth and nose trying to suffocate her but she wrestled herself away from him. Once again they had sex, after which he urinated all over her face." *Id.* Finished with sex, the appellant cut Sandra's throat!

However we may read those facts from that opinion, the assigned error and the issue before the *Jones* court involved consensual sodomy. The appellant contended that the right to privacy was then still developing and that it protected " 'the private, consensual acts of adults of the opposite sex, even in the military environment.' " *Jones,* 14 M.J. at 1010.

Citing *Scoby* 's holding that Article 125 does not interfere with the constitutional right of privacy by prohibiting "unnatural or deviant sexual intercourse between adults in private", Judge Kucera's majority

**9.** Here Judge Cook referred to his uncertainty whether the Supreme Court had, in particular with its summary affirmance of *Doe v. Commonwealth's Attorney for the City of Richmond,* 403 F.Supp. 1199 (E.D.Va.1975), *aff'd* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), limited the constitutional right to privacy to hetero-

sexual acts, and perhaps only those committed within the marital relationship. See also *Lovisi v. Slayton,* 363 F.Supp. at 620.

**10.** The U.S. Court of Military Appeals still awaits, and is unlikely ever to see, that case.

opinion found that oral sex was unnatural or deviant based upon historical treatment within the Old Testament of the Bible, e.g., Leviticus 18:22–23; from the view of the great commentators, e.g., Blackstone; and by court precedent, e.g., *United States v. Dearman*, 7 M.J. 713 (A.C.M.R.1979), *petition denied*, 7 M.J. 376 (1979).[11] *Id.* Judge Kucera concluded by saying that:

> Until such time as the United States Supreme Court may decide that the criminal statutes regulating private consensual sexual behavior are unconstitutional or, the United States Congress decriminalizes such conduct currently proscribed by Article 125, UCMJ, this Court is bound to the precedent of *Scoby* that Article 125 does not trench upon the constitutional rights of privacy.

*Id.* at 1011. That statement remains accurate today.

The next development of consequence in this area of the law was the Supreme Court's decision that the due process clause of the Fourteenth Amendment does not confer any fundamental right on homosexuals to engage in acts of consensual sodomy. *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). Justice White's opinion was joined by then-Chief Justice Burger, and Justices Powell, Rehnquist, and O'Connor. Chief Justice Burger and Justice Powell wrote separate

concurring opinions; the Chief Justice said there was no fundamental constitutional right to commit homosexual sodomy, *Bowers*, 478 U.S. at 196, 106 S.Ct. at 2846–47, and Justice Powell agreed that no due process clause right existed but that severe sentences for consensual acts raised Eighth Amendment issues. *Bowers*, 478 U.S. at 197, 106 S.Ct. at 2847. Justice Blackmun, joined by Justices Brennan, Marshall, and Stevens, dissented, *Bowers*, 478 U.S. at 199, 106 S.Ct. at 2848, finding a distinct right to privacy within their homes and intimate associations with others. Justice Stevens, joined by Justices Brennan and Marshall, dissented, noting that the sodomy statute in question ostensibly applied to all acts of sodomy, but that it could not be enforced constitutionally against married couples or unmarried heterosexual adults; the dissenters also attacked the justification for the statute, i.e., public moral repugnance at homosexual sodomy, as inconsistent with the reality of enforcement generally, and the all-encompassing breadth of the statute on its face. *Bowers*, 478 U.S. at 214, 106 S.Ct. at 2856.

Ours is not a case of homosexual sodomy, but the majority opinion in *Bowers* made several points which bear repeating here. At the outset, the Supreme Court stated that the line of cases relied upon by the Court of Appeals in *Hardwick v. Bow-*

---

**11.** Senior Judge Miller concurred in the result, but his separate opinion noted that inasmuch as the offenses had occurred overseas, the right to privacy must "give way to the military's right—indeed obligation—to curb promiscuity and sexual misconduct among servicemembers. In balancing these competing rights, the balance should be struck in favor of the needs of discipline in the military service." *United States v. Jones*, 14 M.J. at 1011 (A.C.M.R.1982). Judge Miller believed that the appellant forfeited, by his "outrageous conduct, which began with a sexual orgy, including buggery, fellatio, bondage, sadism, and culminated in appellant's [cutting his partner's throat]," whatever right to privacy he might otherwise have been able to claim. *Jones* at 1011–12. We agree that the appellant's conduct in the *Jones* case was outrageous; we also wonder how the acts there came to be termed consensual.

Judge Badami dissented. He believed that "Article 125, UCMJ, is unconstitutional when applied to private, consensual sodomy between heterosexual adults." *Jones* at 1014. In Judge

Badami's opinion, so much of the *Scoby* opinion that extended beyond its facts of homosexual sodomy was dictum. Judge Badami was troubled, as were and are many others then and now about the apparent issue of discriminating among married and unmarried persons. He grounded his concern on language in a 1973 decision of the Supreme Court of the United States which, to Judge Badami, meant that "the right of privacy is a right of all persons, whether married or not." *Jones* at 1012 (citing *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972)). That this was a right to be enjoyed by heterosexuals and not by homosexuals did not seem to bother Judge Badami, even though the equal protection issue as between married and unmarried heterosexuals did. *Jones* appeared before the Supreme Court's decision in *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), but after the less dispositive result in *Doe v. Commonwealth's Attorney for City of Richmond*, at 403 F.Supp. 1199.

*ers,* 760 F.2d 1202 (11th Cir.1985), *rev'd,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), *e.g.,* those "sketched" in *Carey v. Population Services International,* 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977), to find a right to privacy and, thus, any constitutional protection for homosexual sodomy, were ill-applied. Those cases included *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), both of which involved child rearing and education, and *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), which concerned family relationships.

Ordinarily, citation to, rather than lengthy quotation from, pivotal cases will do. Much, however, of what the Supreme Court said in *Bowers* warrants repetition in full.

> Accepting the decisions in these cases and the above description of them, we think it evident that none of the rights announced in those cases bears any resemblance to the claimed constitutional right of homosexuals to engage in acts of sodomy that is asserted in this case. No connection between family, marriage, or procreation on the one hand, and homosexual activity on the other hand has been demonstrated, either by the Court of Appeals or by the respondent. *Moreover, any claim that these cases nevertheless stand for the proposition that any kind of private sexual conduct between consenting adults is constitutionally insulated from state proscription is unsupportable.* Indeed, the Court's opinion in Carey twice asserted that the privacy right, which the Griswold line of cases found to be one of the protections provided by the Due Process Clause, did not reach so far. 431 U.S. at 688, n. 5, 694, n. 17, 52 L.Ed.2d 675, 97 S.Ct. 2010 [2018, n. 5, 2021, n. 17].
>
> Precedent aside, however, respondent would have us announce, as the Court of Appeals did, a fundamental right to engage in homosexual sodomy. This we are quite unwilling to do. It is true that despite the language of the Due Process

Clauses of the Fifth and Fourteenth Amendments, which appears to focus only on the processes by which life, liberty, or property is taken, the cases are legion in which those Clauses have been interpreted to have substantive content, subsuming rights that to a great extent are immune from federal or state regulation or proscription. Among such cases are those recognizing rights that have little or no textual support in the constitutional language. Meyer, Prince, and Pierce fall in this category, as do the privacy cases from Griswold to Carey.

> Striving to assure itself and the public that announcing rights not readily identifiable in the Constitution's text involves much more than the imposition of the Justices' own choice of values on the States and the Federal Government, the Court has sought to identify the nature of the rights qualifying for heightened judicial protection. In *Palko v. Connecticut,* 302 U.S. 319, 325, 326, 82 L.Ed. 288, 58 S.Ct. 149 [152] (1937), it was said that this category includes those fundamental liberties that are "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if [they] were sacrificed."

*Bowers,* 478 U.S. at 190–192, 106 S.Ct. at 2843–44 (emphasis added).

The Supreme Court noted that sanctions against sodomy had ancient roots stretching at least to the Old Testament; that sodomy had been outlawed by virtually all states from the founding of the Republic until very recently; and that such acts were still prohibited in about half of the jurisdictions. "Against this background, to claim that a right to engage in [homosexual sodomy] is 'deeply rooted in this Nation's history and tradition' or 'implicit in the concept of ordered liberty' is, at best, facetious." *Bowers,* 478 U.S. at 194, 106 S.Ct. at 2846.

In the most recent military cases, the issue presented here, even when not so styled, has arisen in fact situations involving Human Immunodeficiency Virus (HIV). This court in *United States v. Negron,* 28 M.J. 775 (A.C.M.R.), *aff'd,* 29 M.J. 324

(C.M.A.1989), considered the appeal of a noncommissioned officer convicted of having disobeyed an order to forewarn prospective sexual partners that he was infected with HIV and to wear a condom during sexual relations; he was also charged with adultery. He obeyed so much of the order that required him to wear a condom, but did not warn his partners that he was infected with HIV. Judge Hostler, writing the majority opinion, in which Judges Meyers and Basham concurred, said:

> The courts ... have to date neither recognized nor created a constitutionally protected privacy right in nonmarital or extramarital sexual relations. Indeed, various forms of nonmarital and extramarital conduct fall within well recognized areas of traditional and statutory proscription.

*United States v. Negron*, 28 M.J. at 777 (citations omitted). Thus the court held that the appellant's "contention that he enjoys a constitutionally protected privacy 'right to freely, and without limitation, engage in consensual, private, intimate, heterosexual relations' is without merit." *Id.*

Five months to the day after our decision in *Negron*, the Court of Military Appeals decided a similar case, that of *United States v. Womack*, 29 M.J. 88 (C.M.A.1989). The appellant, an Air Force staff sergeant, had been convicted of disobeying a "safe sex" order, and of forcible sodomy. The court below, the Air Force court of Review, *en banc*, but including none of the judges who decided or dissented in *Fagg*, affirmed the conviction involving homosexual sodomy, citing *Bowers*. *United States v. Womack*, 27 M.J. 630, 632 (A.F.C.M.R. 1988), *aff'd*, 29 M.J. 88 (C.M.A.1989). Judge Cox wrote the opinion for the Court of Military Appeals; then-Chief Judge Everett and Judge Sullivan, now Chief Judge, concurred. The court noted that forcible sodomy is not constitutionally protected conduct; that "the First Amendment and related concerns of privacy apply differently to the military community because of the unique mission and need for internal discipline," and that "[t]he consequence is that the armed forces may constitutionally prohibit or regulate conduct which might

be permissible elsewhere." *United States v. Womack*, 29 M.J. at 91 (citations omitted). Finding restrictions on the "appellant's sexual activity to be of the same ilk [as lawful requirements and restrictions upon military members such as involuntary inoculations, and prohibited associations], ... we detect no infirmity therein." *Id.*

Three weeks later, but apparently without yet having received the Court of Military Appeals decision in *Womack*, this court again looked closely at the right to privacy in the context of a "safe sex" order. Judge Guintini wrote the majority opinion, and Judges Kane and Gilley concurred, in the case of *United States v. Sargeant*, 29 M.J. 812 (A.C.M.R.1989). Infected with HIV, the appellant, Sergeant Richard Sargeant, had disobeyed a typical "safe sex" order to forewarn partners of his condition and to wear a condom during the act. Notwithstanding the order, Sergeant Sargeant, who was unmarried, engaged in unwarned and unprotected heterosexual intercourse with at least two enlisted women soldiers. Appellant Sargeant asked this court to set aside his conviction on the grounds that his commander's order violated "his constitutional right to privacy, i.e., his right to engage in consensual, private, intimate heterosexual relations with another." *Id.* at 815.

Judge Giuntini wrote:

> Our research indicates that the United States Supreme Court has never explicitly recognized a constitutional right to engage in consensual, private, heterosexual relations *per se;* neither have they rejected it. Absent unequivocal precedent, we decline to carve out a constitutional right based on those decisions of the United States Supreme Court that have recognized the right to privacy, or any other constitutional protection regarding that conduct, in limited or qualified circumstances. Moreover, we believe there is no constitutional right to have such sexual intercourse free of reasonable regulation, as here, requiring a [soldier] to act prudently to protect the lives of others.

*Id.* at 817.[12]

In *United States v. Johnson,* 30 M.J. 53 (C.M.A.1990), *cert. denied,* — U.S. —, 111 S.Ct. 294, 112 L.Ed.2d 248 Judge Cox, with Judge Sullivan (now Chief Judge) and then-Chief (now Senior) Judge Everett concurring, spoke for the Court in the latest case involving the issue now before us. Appellant Johnson had been convicted of attempted consensual sodomy, consensual sodomy, and aggravated assault. The assault arose from an attempt at anal intercourse while the appellant knew he was infected with HIV. The court concentrated on the issue of whether the evidence was sufficient to sustain the conviction, i.e., whether an aggravated assault had been committed given that the actor was a person infected with HIV. Judge Cox wasted little time and fewer words on the issue of the constitutionality of Article 125: "[S]odomy, consensual or otherwise, is not constitutionally protected conduct within the military." *Johnson,* 30 M.J. at 56 (citations omitted). But even without that latest pronouncement, nothing in *Scoby* has been modified or diluted by any legislative act by Congress, executive order by the President, or court decision by the United States Court of Military Appeals or the Supreme Court of the United States. If anything, even before *Johnson, Scoby* had been strengthened, not weakened among the sources of law during the passage of time from 1978 to 1991.[13]

The *Fagg* court noted "that while sodomy was illegal in all 50 states in 1960, by 1986 only half continued to criminalize [private acts of sodomy between consenting adults]." *Fagg,* 33 M.J. at 620. All of that may be correct; but, such information, and perceived evidence of growing public acceptance of such acts, have no force in this forum. When we interpret what we only infer from case law, especially in the law of privacy, the constitutional boundaries of which are indefinite and uncertain, the risk of overstepping or underreaching is as great as it is tempting. We are able, with the help of the Supreme Court of the United States, the United States Court of Military Appeals, and the prior decisions of this court to put that danger behind us.

The Supreme Court said it very well in *Bowers:*

> [We are not] inclined to take a more expansive view of our authority to discover new fundamental rights imbedded in the Due Process Clause. The Court is most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or design of the Constitution.

*Bowers,* 478 U.S. at 194, 106 S.Ct. at 2846.

All of that brings us back to Judge Kucera's statement in *Jones:*

> Until such time as the United States Supreme Court may decide that the criminal statutes regulating private consensual sexual behavior are unconstitutional or, the United States Congress decriminalizes such conduct currently proscribed by Article 125, UCMJ, this Court is bound to the precedent of *Scoby* that Article 125 does not trench upon the constitutional rights of privacy.

*Jones,* 14 M.J. at 1011.

Congress has certainly been on notice of the developments in the law on the right to privacy. And, since the *Griswold* case in 1965, Congress has amended the UCMJ

---

**12.** Citing *Griswold* and *Eisenstadt,* Judge Gilley commented that "While the United States Constitution does not expressly mention or enumerate a right to privacy, the courts have recognized the right of married *and unmarried persons* to privacy in matters of sexual intimacy." *Sargeant,* 29 M.J. at 815 (footnote omitted) (citations omitted) (1972) (emphasis added). To the extent that the *Sargeant* opinion implied that unmarried persons necessarily enjoy the same right to privacy as do married persons, our court went too far.

**13.** Albeit from a concurring opinion, Justice Scalia's remarks in a recent case are worth recording here: "Our society prohibits, and all human societies have prohibited, certain activities not because they harm others but because they are considered, in the traditional phrase, 'contra bonos mores,' i.e., immoral. *In American society, such prohibitions have included, for example, sadomasochism, cockfighting, bestiality, suicide, drug use, prostitution, and sodomy."* *Barnes v. Glen Theatre, Inc.,* — U.S. —, 111 S.Ct. 2456, 2465, 115 L.Ed.2d 504 (1991) (Scalia, J., concurring) (emphasis added).

significantly three times, including the sweeping changes of the Military Justice Act of 1968. Military Justice Act of 1968, Pub.L. No. 90–632, 82 Stat. 1335 (1968); Military Justice Act of 1983, Pub.L. No. 98–209, 97 Stat. 1393 (1983); and Military Justice Act Amendments of 1986 Pub.L. 99–661, 100 Stat. 3905 (1986). Perhaps the time has come to change Article 125; perhaps not. But this court is not in the position to answer Justice Holmes's eloquent and oft-quoted plaint: "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds laid down have vanished long since, and the rule simply persists from blind imitation of the past." Holmes, *The Path of the Law*, 10 Harv.L.Rev. 457, 469 (1897), *quoted in* Justice Blackmun's dissenting opinion in *Bowers*, 478 U.S. at 199. As the Court of Military Appeals and we have said in circumstances similar to these, such decisions are for Congress, not this court. *United States v. Brandt*, 20 M.J. 74 (1985), and *United States v. Brookins*, 33 M.J. 793 (A.C.M.R.1991).[14]

The findings of guilty and the sentence are affirmed.

Senior Judge FOREMAN and Judge HAESSIG concur.

---

**14.** Given the clear precedent of this and our higher courts, we find it unnecessary to delve into issues of equal protection, or to add our voice to what standard of review should be applied to cases involving that issue or to those involving fundamental rights. Nor is our opinion a veiled call for change. Whatever level of review is required (*see, e.g., Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985)), any number of qualifying bases may be suggested to justify legislating sexual conduct in a disciplined armed force, none of which would necessarily intrude into the sanctity of a marital bedroom occupied solely by a man and a woman who are married to each other.